No. 3030

Second Circuit

LANE v. E. J. DEAS CO., INC.

(December 31, 1929. Opinion and Decree.)
(January 31, 1930. Rehearing Refused.)
(March 10, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

Foster, Hall & Smith, of Shreveport, attorneys for plaintiff, appellant.

Wilkinson, Lewis & Wilkinson, of Shreveport, attorneys for defendant, appellee.

ODOM, J. On March 24, 1925, the E. J. Deas Company, Inc., entered into a contract with the police jury of Caddo Parish to pave a portion of the Shreveport-Blanchard public road for the sum of $110,000, and gave bond with the Aetna Casualty Company as surety for the faithful performance of the contract in accordance with the specifications. The contract was entered

into and the bond given pursuant to the provisions of Act No. 224 of 1918, p. 406. The contractor defaulted and the surety company took over the contract, re-let the work to another concern, and the police jury turned over to the surety company the full amount of the contract price, less the amount which had been previously paid to the original contractor. This proceeding was in accordance with the bond, from which we quote the following:

"Upon failure of the principal to promptly and efficiently prosecute said work in any respect to the satisfaction of the Parish Engineer, the said sureties shall take charge of the work and complete the contract at their own expense, being allowed, however, any balance in the hands of the Police Jury due under said contract."

Prior to the date on which the contractor defaulted, and while the work was in progress, the contractor wrote two orders or assignments, one dated June 6, 1925, and the other June 13th, in words and figures as follows:

"Parish of Caddo, Shreveport, Louisiana.
"Please pay ———, of Shreveport, Louisiana, the amount of Seven Hundred Dollars Thirty Cents ($700.30) *on final estimate* for work on Shreveport-Blanchard road.
"E. J. Deas Company, Inc.,
"By E. J. Deas, Pres."
(Italics ours.)

The other is identical with the above, except as to the amount, which is $461.78. Mr. Deas, president of the contracting company, presented one of the orders to Mr. Bullen, parish engineer, who wrote thereon the following certificate:

"I hereby certify that there is due the E. J. Deas Company, Inc., the amount of $700.30 for work done on Shreveport-Blanchard road to June 5th, Incl.
"J. T. Bullen,
"Engineer Caddo Parish."

Mr. Deas presented the above to Mr. L. F. Clawson, parish treasurer, who wrote thereon the following:

"Accepted. L. F. Clawson, Parish Treas."

The other order was presented to Mr. Gayle, chairman of the road committee, who wrote thereon the following:

"I certify that there is due the E. J. Deas Company, Inc., the amount of $461.78, for work done on Shreveport-Blanchard road to June 12th, Incl.
"A. C. Gayle,
"Chairman of Road Committee."
And Mr. Clawson indorsed it as follows:
"Accepted. L. F. Clawson, Parish Treas."

In order to secure funds with which to carry on the work, Mr. Deas, president of the company, sold these so-called certificates to the plaintiff, C. W. Lane, at a discount and inserted his name thereon as transferee. Mr. Lane, subsequently told Mr. Clawson, the parish treasurer, and Mrs. Duringer, secretary of the police jury, that he had purchased these certificates. The contractor defaulted in August, and the surety company took over the contract on the 17th of that month.

On October 23rd following, Lane filed a sworn statement of the amount due him with the recorder of mortgages, as provided in section 2, Act No. 224 of 1918, which statement recites in part that the E. J. Deas Company, Inc., contractor, is due him the sum of $1,162.08 (being the total of the two certificates), "on account of having furnished money to said E. J. Deas Company, Inc., for the purchase of material in the construction of and the payment of labor on the Shreveport-Blanchard road."

Lane made demand on both the police jury and the surety company for payment, which demand was refused, and he brought

this suit against the Deas Company (then in the hands of receivers), the police jury, the surety company, Bullen, and Gayle, in solido. The receivers made no defense, and judgment went against them by default, ordering them to pay the amount in course of administration. Plaintiff's demands against all other defendants were rejected, and he appealed.

Counsel for plaintiff in the brief filed in this court say that "the Caddo Police Jury would have paid plaintiff the amount of the assignments had not the surety company intervened and opposed the payment and agreed to take over the work. In consequence of this agreement, the Police Jury turned over to the surety company the funds due the contractor, E. J. Deas Company. Therefore, the actual controversy is between the plaintiff and the surety company."

The question whether the surety company is liable to plaintiff for the amount of this claim under the circumstances depends upon the obligation which it assumed under the contract and bond, construed, as they must be, with reference to the law under which they were written.

The law relating to public works in force at the time this contract was entered into was Act No. 224 of 1918, section 1 of which provides that, when public roads are about to be constructed under a contract in excess of $500, at the expense of any parish, the parties shall reduce the contract to writing and sign it, and that it shall be the duty of the official representing the parish to require of the contractor bond, with surety, which contract and bond shall be recorded in the office of the recorder of mortgages. The letter of the law was complied with in this case. Under the terms of the contract, which is in evidence, the contractor obligated itself to furnish all materials and to do and perform all labor and work necessary for the completion of the paving according to the specifications, and the parish of Caddo obligated itself to pay for said work the sum of $110,000, "when completed in accordance with the plans and specifications."

The bond furnished by the contractor is written in exact accord with the law; the obligation of the surety being to "secure the faithful performance of the contract, and the full payment of all sub-contractors, workmen, laborers, mechanics, and furnishers of materials and supplies," according to the specifications.

The bond further specifically provided that, "upon failure of the principal to promptly and efficiently prosecute said work, in any. respect to the satisfaction of the engineer, the said sureties shall take charge of the work and complete the contract at their own expense, being allowed, however, any balance of the fund in the hands of the Police Jury due under said contract." The contractor defaulted, and the surety took over the work, and the parish paid to it the balance in its hands under the contract.

That the parish of Caddo has fully complied with the contract and discharged its obligation cannot, we think, be questioned. It agreed to pay $110,000 to have the road paved, and this it has done. There was never any objection made by this claimant or any other, to the solvency or sufficiency of the bond, which was timely recorded with the contract in the office of the recorder of mortgages of the parish where the work was to be done, all in accordance with the act. By thus complying with the law, the parish was relieved from the payment of any amount beyond the contract price. There is therefore no room

for any demand by any claimant against the parish.

But the surety stepped in and took over the work and undertook to complete it and did complete it at a loss to itself. By taking over the contract, the surety put itself in the place of the contractor and assumed its obligation, which was to complete the work according to the specifications. Klein vs. Collins, 159 La. 704, 106 So. 120.

In addition to its obligation to complete the work, the surety, under the law and under the bond, owed the further duty of paying the claims of all "sub-contractors, workmen, laborers, mechanics, furnishers of materials, and supplies" chargeable against the contract and work, whether those claims arose before or after it took over the contract. By taking over the contract, the surety put itself in the place and stead of the contractor, but it was not relieved of its duty to pay the claims of subcontractors, laborers, and materialmen. But its duty extended no further than to complete the work according to the plans and to pay the claims specifically mentioned in the law and the bond. It did not become obligated to pay the personal debts and obligations made by the contractor during the progress of the work, except such as were properly chargeable against the contract under the law.

Counsel for plaintiff contend that their client's claim is one of those chargeable against the work and which the surety is obliged to pay under the law. Proceeding upon that theory, plaintiff on October 23rd, more than 60 days after the contractor defaulted and the surety took over the work, filed with the recorder of mortgages a sworn statement of the amount due him in accordance with section 2 of said act, by virtue of which he claims a lien. But that gave him no lien, for the reason that the law grants no lien in favor of persons who advance funds to the contractor to carry on the work. Section 2 of Act No. 224 of 1918, provides that any person "to whom any money shall be due *on account of having done any work, performed any labor on, or furnished any material in the construction, erection, alteration or repair of any such building, road, etc.*" (italics ours) may file a sworn statement, etc. But the plaintiff's claim was not for work or labor done or for materials furnished. The sworn statement which he filed recites that the contractor is indebted unto him "in the sum of Eleven Hundred and Sixty-two Dollars and Eight Cents ($1,162.08), being money due affiant on account of having furnished money to the said E. J. Deas Company, Incorporated, for the purchase of materials in the construction of and the payment of labor on the Shreveport-Blanchard road." In other words, plaintiff advanced the contractor money with which to prosecute the work. A similar situation was presented in the case of Red River Valley Bank vs. Louisiana, etc., 142 La. 838, 77 So. 763, and the court held that a statute providing for privileges upon works in favor of laborers, mechanics, and furnishers of materials confers no privilege upon public property in favor of persons not included in the enumeration, "such as those who lend money to the contractor."

If, however, the money is paid directly by the claimant to workmen, laborers, or materialmen or by the claimant through the contractor as his agent for that purpose, and a contemporaneous conventional subrogation of their rights is obtained from such laborers and materialmen, then the claimant is protected, but not otherwise. Such was the holding in the very recent case of State et al. vs. Smith et al., 167 La. 301, 119 So. 56. There was no payment by the plaintiff to the laborers and

materialmen, but the money was advanced to the contractor, who used it to pay such bills.

We find no merit in the contention that the parish of Caddo became bound to pay plaintiff's claim. The affairs of a parish are administered by the police jury, which body alone can bind it. It is argued that the orders given by the contractor to plaintiff were transfers of funds in the hands of the police jury belonging to the contractor, and that the police jury accepted the transfers and thereby became bound. But the police jury did not accept the transfers and as a body knew nothing of them. The orders were presented to Mr. Clawson, the parish treasurer, who wrote upon them the word "Accepted" and signed his name as "Parish Treasurer." The parish treasurer is elected by the police jury, and is at all times under its direction. He has neither administrative nor discretionary powers. His duties, as fixed by statute, are to keep the money belonging to the parish, to disburse the same according to law, to take receipts therefor, and to keep accounts of all receipts and expenditures of the parish. He can pay out no money of the parish unless the same has been previously allowed by the police jury or a court order. See Revised Statutes, sec. 2639 et seq., Wolff, vol. 2, p. 1530.

In plaintiff's first amended petition, he alleged that the parish treasurer "was duly authorized by the police jury of Caddo parish to accept notice of the certificates and the assignments made by E. J. Deas Company." He was called upon to state specifically what authority the treasurer had to act for the police jury. He pointed out none, but in his second amended petition he alleged that A. C. Gayle and J. T. Bullen, "under the rules, by-laws and regulations of the Police Jury and by resolution passed by the Police Jury were vested with full authority to act in the premises * * * and more particularly to certify to the instruments herein sued upon and to accept the transfers and assignments due the E. J. Deas Company by the Police Jury of Caddo Parish to C. W. Lane, and that their acts have been duly ratified by the Police Jury of Caddo Parish."

In a third amended petition, plaintiff declared that it was not within his power to point out any ordinances or resolution of the police jury which vested said Gayle or Bullen with any authority to issue the aforesaid certificates, and being unable to do so, he amended his pleadings "by striking out that portion of said amended and supplemental petition which alleges that A. C. Gayle and J. T. Bullen were authorized by ordinances and resolutions of the Police Jury to sign the certificates herein, excepting, however, the resolution of the Police Jury which authorized the President of the Police Jury to enter into the contract with the E. J. Deas Company."

On the trial of the case, it was affirmatively shown that the issuance of these certificates was not authorized by the contract or by motion, resolution, or by-law of the police jury, or sanctioned by precedent. Bullen, the parish engineer, testified that, if he had ever before issued a like certificate during his seven years' employment as engineer, he had no recollection of it. He further testified that the certificates were not intended to be evidences of an indebtedness of the police jury to the contractor, but only to show that the contractor had done work to that amount since the last estimate. Furthermore, there was no transfer of a present indebtedness and none intended. The assignments were conditional only. The orders on their face show that they were to be paid only on

"final estimate." Whether they would ever be paid was contingent on whether there would be due the contractor anything on "final estimate." The contractor defaulted, and there was nothing left out of which to pay the claims.

The parties with whom plaintiff dealt in this case were authorized neither to represent nor bind the parish.

"Police juries, like all other corporations created under the laws of Louisiana, are artificial beings or persons who can act only in the mode prescribed by the law creating them. No officer of a police jury can legally bind, or stand in judgment for the corporation without special authorization." Hoffpauir vs. Wise, 38 La. Ann. 704; Police Jury vs. Mayor and City Council, 38 La. Ann. 631; Union Sulphur Co. vs. Parish of Calcasieu, 153 La. 858, 96 So. 787.

Viewed in the most favorable light from plaintiff's standpoint, this was a transfer of only part of a debt. The police jury, not having assented to the transfer, is not bound. Red River Valley Bank vs. Louisiana, etc., supra; R. C. L., vol. 2, p. 621.

Counsel for plaintiff cite and apparently rely on the case of Baker vs. City of Shreveport, 165 La. 395, 115 So. 631. The distinction between that case and the one at bar is manifest. It has no application here.

Lastly, plaintiff asks in the alternative that, if the court should hold that neither the parish nor the surety company is bound, judgment should be rendered against Gayle and Bullen in solido. Counsel have cited no law or precedent under which they can be held for this debt, and we know of none.

The judgment appealed from is correct, and is affirmed, with costs in both courts.