GLENS FALLS INDEMNITY COMPANY, Plaintiff and Appellant, *v.* JOSÉ C. LLUCH ET AL., Defendants and Appellees.

No. 8627. Argued March 9, 1943.—Decided April 30, 1943.

*James R. Beverley, José López Baralt, R. Rodríguez Lebrón,* and *Carlos V. Dávila* for appellant. *Jorge Díaz Cruz, Luis López de Victoria,* and *Miguel Marcos Morales* for the respective appellees.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

In May 1939, José C. Lluch and Nicanor Rodríguez, contractors, doing business under the name of Lluch & Rodríguez, entered into a contract with the Municipality of Yauco for the building of an extension to its hospital. As said contract required the furnishing of a bond for the faithful performance thereof on the part of the contractors (performance bond), the latter, on May 24, 1939, applied to Glens Falls Indemnity Company, plaintiff and appellant herein, for the issuance of the proper bond. In their application Messrs. Lluch & Rodríguez, hereinafter referred to as "the contractors," agreed to assign to Glens Falls Indemnity Company, hereinafter referred to as "the surety," all the moneys which they might be entitled to receive from the

Municipality of Yauco by reason of said contract, in the event of a breach of the terms thereof and of their failure to pay the debts contracted for the execution of the work, it being understood that such assignment would become effective as of the date of the furnishing of said bond.

Besides the faithful performance of the terms of the contract concerning the execution of the work, the bond secured the payment of every claim for the purchase price of materials furnished as well as such claims as might arise from unpaid wages to workmen.

During the execution of the work, or on December 2 and 16, 1939, the contractors received from Crédito y Ahorro Ponceño, Yauco Branch, as loans, the sums of $500 and $650, respectively, and on January 2, 1940, they received from Miguel A. Roura, as a loan also, the sum of $250. The three loans were made for the payment of wages to workmen, and it is admitted by the surety that said sums were actually and totally disbursed for such purpose. In connection with each loan the contractors subscribed before a notary, on the respective dates aforesaid, a communication addressed to the Municipal Auditor of Yauco, empowering said officer and other municipal authorities to discount and pay direct to the lender the amount of each loan, expressly admitting in each of the three instruments to have received in cash on the dates mentioned the respective sums "for the payment of wages in the said work." There appear at the foot of each communication the signatures of the Mayor, the Treasurer, and the Auditor of the Municipality of Yauco, respectively, doubtless as an acknowledgment of the receipt of the communication.

At the termination of the work, the Municipality of Yauco kept a balance in favor of the contractors amounting to $4,732.68, made up of two items, to wit: $1,132.22 representing the 10 per cent retained pursuant to the terms of the contract until the full completion of the work, and

$3,599.46 as the sum involved in the final certification. The surety claims to be a preferred creditor to the extent of $4,510.19 out of such balance, alleging to have been subrogated to the rights of the materialmen and to $18 as the wages due a workman, all of which was paid by it. Likewise, the Crédito y Ahorro Ponceño and Miguel A. Roura allege to have a preferred claim over the surety, amounting to $1,400 due to them. As the amounts claimed by the surety and the lenders exceeded the funds in the hands of the municipality, and as the latter was ready to pay the claims of the lenders necessarily to the prejudice of the surety, the latter brought the present action for a declaratory judgment or decree to determine which of the claims, whether that of the surety or that of the lenders, is entitled to priority.

The lower court rendered judgment sustaining the contention of the lenders, and from that judgment the present appeal has been taken.

The grounds which form the basis of the judgment appealed from are as follows:

(*a*) That as the loans had been incurred in order to invest the whole proceeds thereof, as in fact they were invested, in the payment of wages, the lenders were subrogated to the rights of the workmen; however, as the right of subrogation granted by law to the surety is not effective until the latter has discharged all the obligations secured by the bond, and as the credits of the lenders are secured by the bond by virtue of the subrogation to the rights of the workmen, it clearly follows, according to the lower court, that the rights of the lenders as regards the funds in the hands of the municipality are paramount to those claimed by the surety; and

(*b*) that irrespective of the right of subrogation invoked by the lenders, their credits are secured by the bond.

In view of the conclusion reached by us, we will reverse what otherwise would be the logical order of the discussion.

I. Is there in this case such a right of subrogation as is invoked by the lenders?

In support of the existence of said right, the court cites the following sections of the Civil Code:

"Section 1112. Any person, whether he has an interest or not in the fulfilment of the obligation, and whether the debtor knows and approved it or is not aware thereof, can make the payment.

"The person paying for the account of another may recover from the debtor what he may have paid, unless he had done it against his express will.

"In such case he can only recover from the debtor in so far as the payment has been useful to him."

"Section 1164. Subrogation shall be presumed:

"1. * * * * * * *

"2. When a third person, who is not interested in the obligation, pays with the express or implied approval of the debtor.

"3. * * * * * * *

"Section 1166. Subrogation transfers to the subrogated the credit, with the corresponding rights, either against the debtor or against third persons, be they sureties or holders of mortgages."

The sections above transcribed do not support the conclusions reached by the trial court. Section 1112, first quoted, treats of the persons who may make the payment. Section 1166, last quoted, treats of the effects of the subrogation, and §1164 (2), which is the second one quoted, refers to the subrogation presumed by law where a third party, not interested in the obligation, *pays with the express or implied approval of the debtor.*

Subdivision 2 of §1164 clearly refers to the payment directly made by a third person to the creditor with the express or implied approval of the debtor. However, in the case at bar, neither Crédito y Ahorro Ponceño nor Miguel A. Roura paid the workmen their credits. What they did was to lend money to the debtor for the latter to pay the workmen, and as it is expressly prescribed in §1163 of the same code that the subrogation of a third party to the rights

of a creditor can not be presumed, except in the cases expressly mentioned in said code, the inapplicability of the legal provision invoked by the court and by the appellees is manifest. We fail to comprehend why the court disregarded §1165 of the Civil Code, and it seems to us very significant that, despite the ample discussion thereof by the appellant in its brief, the appellees were completely silent in their brief concerning the said section, which undoubtedly contains the law applicable to the case. It reads as follows:

"Section 1165. A debtor may make the subrogation without the consent of the creditor when, in order to pay the debt, he may have borrowed money *in a public instrument, stating his purpose and setting forth in the receipt the origin of the sum paid.*"

Since the subrogation of a third person, as we have seen, can not be presumed, save in the cases expressly mentioned in the Civil Code, it is manifest that in order that the subrogation described in §1165 might become effective, compliance must be had with the requisites set forth in said section, to wit: (1) that the obligation be evidenced by a public instrument; (2) that it be set forth that the money has been borrowed to pay the debt, such purpose being expressed in the public instrument; and (3) that the source from which the sum paid was obtained be stated in the receipt.

Were the above requisites complied with in the instant case? In the first place, the loans were not embodied in a public instrument, and, in the second place, although it was stated that the money had been borrowed for the payment of the wages, no receipt was issued showing the source from which the sum paid was obtained.

Commenting on the corresponding section—No. 1211—of the Spanish Civil Code, Manresa says:

"The Code prescribes for this special subrogation certain definite requisites, determined with all clearness, in which the general rule, that novation does not require any solemn form, is not followed, for in such case the same becomes indispensable, and, moreover, it is

necessary that the instrument should set forth the purpose to which the money is to be applied, and then, when paying, there must be stated the source from which the money was obtained.

"The first of these requisites is that the loan made for effecting such payment should be embodied in a public instrument, and the doubt arises whether there is subrogation when owing to the pressure of time or for any other reason, such instrument has not been executed prior to delivering to the debtor the sum lent. In our opinion the case falls within the purview of the general provision of law which requires compliance with a certain procedure for the enforcement of contractual obligations and, consequently, the lender may compel the debtor to execute the proper deed, such deed, of course, to be executed before payment is made to the creditor, which is a different time from that of effecting the loan and delivery of the money to the obligor. We think so because the statute, in requiring the authenticity, takes into account the creditor whose consent is dispensed with and, moreover, because if the requisites of the subrogation were not complied with at the time of effecting the payment, the obligation would be thereby extinguished and a different one might be incurred but the former would not be extended through novation.

"The other two requisites, viz., that the purpose of the loan be expressed in the deed embodying the same and that the source from which the money was obtained be set forth in the receipt are not difficult to explain, and it should be observed as regards the latter that, as it tends to secure the rights of the lender, such lender is entitled to be present when payment is effected and to require, relying on the recital made in the loan contract, that the statement securing him the subrogation be set forth in the receipt.

"It is generally advisable that the receipt, which tends to corroborate the right set forth in the loan deed, also be embodied in a public instrument, although the statute does not require it, as in the case of the loan contract; and it may consist of a simple receipt, where the obligation discharged and novated has not been embodied or acknowledged in a public instrument." *Comentarios al Código Civil,* 1907 ed., vol. 8, pp. 441–2.

Referring to said subrogation, Scaevola, in his commentaries on the Code (vol. 19, p. 1049), says that the conditions under which it should be effected are very clear and are copied from the Code Napoleon. Accordingly, when

treating of this kind of subrogation the Louisiana Civil Code, in subdivision 2 of §2160, provides that to make this subrogation valid, it is necessary that the act of borrowing and the receipt be executed in the presence of a notary and two witnesses; that, in the act of borrowing, it be declared that the sum was borrowed to make the payment, and that in the receipt it be declared that the payment has been made with the money furnished for that purpose by the new creditor. See by way of illustration the cases of *Bank of Bienville* v. *Fidelity & Deposit Co. of Md. et al.* (La. 1931), 135 So. 26; *Lane* v. *C. J. Deas Co.* (La. 1929), 125 So. 514; *State* v. *Smith,* 119 So. 56, 64.

Commenting on §1211 of the Civil Code of Cuba, identical with the one under consideration, the textwriter Eduardo Rafael Núñez y Núñez, in his work *Código Civil,* vol. 5, p. 431, in a summary of the judgment of the Supreme Court of Cuba, of March 4, 1914, No. 17, says:

> "To enable a lender to subrogate himself to the rights of the creditor, where the sum lent has been applied to the payment of an obligation, it is indispensable, under Section 1211 of the Civil Code, that the loan be evidenced by a public instrument in which the debtor expresses his purpose of applying the proceeds of the loan to the extinction of the obligation, and that there be expressed in the receipt the source of the sum paid."

As the lenders can not be subrogated to the rights of the workmen, we will proceed now to discuss the second ground of the judgment, viz.:

II. Are the credits of the lenders secured by the bond?

The judge of the court below concluded that they were, construing a clause of the performance bond which appears on page 100 of the Transcript of the Evidence and which, with reference to the obligation of the surety, says:

> . . . . . and shall promptly make payments to all persons supplying him (the contractor) labor or material in the prosecution of the

work contemplated by said contract, . . . ." (Parenthetical matter supplied.)

The lower court construed said clause in the sense of including any assignee of the contractor who has furnished him with funds for the payment of labor or material. In order to reach that conclusion it invoked clause (*d*) contained in the instructions prepared for the interpretation of the Labor Bond, which clause, literally copied, reads as follows:

"(*d*) As used herein, the term 'persons' refers to any person engaged in the prosecution of the work provided for in said Contract or in any amendment or extension of or addition to said Contract, who is an agent, servant, or employee of the principal, or of any subcontractor, or of any assigned (assignee) of said Principal or of any subcontractor, and also anyone so engaged who performs the work of a laborer or of a mechanic regardless of any contractual relationship between the Principal or any subcontractor, or any asignee of said Principal or of said subcontractor, and such laborer or mechanic, but shall not include office employees not regularly stationed at the site of the work." (Parenthetical matter supplied.)

After transcribing the above-quoted clause, the lower court in its opinion said:

"So that, according to this interpretation of the term 'persons,' as used in this clause of the bond furnished by the plaintiff, which appears from the evidence presented by the plaintiff itself, it is obvious that the plaintiff bound itself to pay any claim on account of salaries to any assignee of the principal under the contract, and we already know that the principal under the contract is none other than the contractor Lluch & Rodríguez, according to the very bond transcribed in the complaint. Hence, quite irrespective of the right of subrogation, by the very terms of the contract and all the instruments annexed thereto, introduced in evidence by the plaintiff, it was expressly agreed that the plaintiff, as surety, undertook to make payments to any persons who supplied money for the payment of wages for the work and to every assignee for the collection of said wages, whether the assignor was the workman, the principal, or the contractor."

A Spanish translation of the clause in question reads as follows:

"(*d*) Según se usa aquí, el término 'personas' se refiere a cualquier persona dedicada a la prosecución de la obra provista en dicho Contrato o en cualquier enmienda o ampliación de o adición a dicho Contrato, que sea un agente, sirviente, o empleado del principal, o de cualquier subcontratista, o de cualquier cesionario (*assignee*) de dicho principal o de cualquier subcontratista, y también cualquier persona así dedicada que realiza el trabajo de un obrero o de un mecánico, independientemente de cualquier relación contractual entre el principal, o cualquier subcontratista, o cualquier representante de dicho principal, o de dicho subcontratista, y tal obrero o mecánico, pero no incluirá empleados de oficina que no estén regularmente estacionados en el sitio de la obra." (Paréntesis nuestro.)

A careful reading of the clause just transcribed leads us to the conclusion that the term "persons" therein used refers to anyone who has personally worked in the prosecution of the work as a laborer or mechanic, or agent, servant, or employee of the contractor, or of any subcontractor, or of any assignee of either of these, regardless of any contractual relation between the laborer or mechanic and said persons. It is likewise clear, in our judgment, that the phrase, "all persons supplying him (the contractor) labor or material in the prosecution of the work contemplated by said contract," does not include such persons who, like the lenders herein, confined themselves to supplying money to the contractor for the payment of workmen's wages. Accordingly, in a monograph on the subject which appears in 127 A.L.R. 974, 976, it is said:

"The well-established general rule is that a claim for money loaned or advanced to a building or construction contractor is not within the coverage of the ordinary form of contractor's bond conditioned for the performance of the contract and the payment of all claims for labor and material, even though the borrowed money has been wholly applied to the payment of the cost of labor and material actually going into the construction project."

As putting aside the priority claimed by the lenders, it appears from the record that all preferred claims against the funds kept by the municipality have been satisfied by the surety, the declaratory judgment appealed from must be reversed and another rendered instead, declaring that the appellant surety has been subrogated to the rights of the materialmen and of the workmen and that, consequently, it has priority as such surety to recover the sum of $4,510.19 paid by it as such surety for the account of the principals on the bond, José G. Lluch and Nicanor Rodríguez, trading under the name of Lluch & Rodríguez. Costs are imposed on the defendants, Crédito y Ahorro Ponceño and Miguel A. Roura.