GLENS FALLS INDEMNITY COMPANY, demandante y apelante,
JOSÉ C. LLUCH ET ALS., demandados y apelados.

Núm. 8627.—*Sometido:* Marzo 9, 1943. *Resuelto:* Abril 30, 1943.

James R. Beverley, José López Baralt, R. Rodríguez Lebrón y Carlos V. Dávila, abogados del apelante; Jorge Díaz Cruz, Luis López de Victoria y Miguel Marcos Morales, abogados, respectivamente, de los apelados en el caso.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

En mayo de 1939, José C. Lluch y Nicanor Rodríguez, contratistas haciendo negocios bajo el nombre de Lluch & Rodríguez, celebraron un contrato con el Municipio de Yauco para la ampliación del hospital de aquel municipio. Como dicho contrato. requería la prestación de una fianza para garantizar su fiel cumplimiento por parte de los contratistas (performance bond), suscribieron éstos el 24 de mayo de 1939 una solicitud dirigida a la demandante apelante Glens Falls Indemnity Company interesando de ésta la expedición

de la correspondiente fianza. En la solicitud se obligaro
los Sres. Lluch & Rodríguez, que en adelante denominaremo
"los contratistas" a ceder a Glens Falls Indemnity Con
pany, que denominaremos "la fiadora", todo el dinero qu
tuviesen derecho a percibir del Municipio de Yauco por ra
zón de dicho contrato, en caso de que violasen sus condicio
nes y no pagaren las deudas contraídas con motivo de la ejo
cución de la obra, siendo entendido que los efectos de la co
sión habrían de retrotraerse a la fecha de la prestación d
la fianza.

En adición al fiel cumplimiento del contrato en lo qu
respecta a la ejecución de la obra, la fianza garantizaba e
pago de toda reclamación por concepto del precio de mate
riales suministrados, así como las procedentes de salarios no
satisfechos a los obreros.

Durante la ejecución de la obra, es decir, el 2 y el 16 de
diciembre de 1939, los contratistas recibieron del Crédito y
Ahorro Ponceño, Sucursal de Yauco, en calidad de préstamo
las cantidades de $500 y $650 respectivamente, y el 2 de
enero de 1940 recibieron de Miguel A. Roura, por idéntico
concepto, la cantidad de $250. Las tres operaciones de prés-
tamo fueron hechas para pagar jornales de los obreros, y
está aceptado por la fiadora que en efecto dichas sumas fue-
ron totalmente invertidas en esa atención. En relación con
cada préstamo los contratistas suscribieron ante notario, en
la fecha de cada uno de ellos, una comunicación dirigida al
Auditor Municipal de Yauco, autorizando a dicho funciona-
rio y demás autoridades municipales a descontar y pagar di-
rectamente al prestamista la cantidad objeto de cada prés-
tamo, admitiendo expresamente en cada uno de dichos tres
documentos haber recibido en efectivo en las fechas indica-
das las respectivas sumas "para el pago de jornales de la
obra mencionada". Al pie de cada comunicación aparecen
las firmas del Alcalde, el Tesorero y el Auditor Municipal
de Yauco, respectivamente, sin duda para acreditar el recibo
de la comunicación.

Luego de terminadas las obras, quedó en el Municipio de Yauco un balance a favor de los contratistas montante a $4,732.68, compuesto de dos partidas, a saber: $1,132.22 correspondientes al 10 por ciento retenido de acuerdo con los términos del contrato hasta la total terminación de la obra, y $3,599.46, importe de la certificación final. De este fondo la fiadora reclama preferentemente la cantidad de $4,510.19, alegando haberse subrogado en los derechos de los proveedores de materiales y de $18 de salarios a un obrero, todo lo cual·fué pagado por ella. Asimismo el Crédito y Ahorro Ponceño y Miguel A. Roura reclaman que de dicho fondo y con preferencia a la fiadora se les paguen los $1,400 adeudádosles. Como lo reclamado por la fiadora y por los prestamistas excede del fondo en poder del Municipio, y este último estaba dispuesto a pagar el crédito de los prestamistas con el consiguiente perjuicio a la fiadora, presentó esta última la demanda de este caso en solicitud de una sentencia o decreto declaratorio que determine cuál de las reclamaciones, si la de la fiadora o la de los prestamistas, tiene preferencia.

La corte inferior dictó sentencia declarando con lugar las pretensiones de los prestamistas y para revisarla se estableció el presente recurso.

Los fundamentos que sirven de base a la sentencia apelada son:

(a) Que habiéndose celebrado los contratos de préstamo para invertir la totalidad de las cantidades prestadas, como en efecto se invirtió, en el pago de jornales, los prestamistas se subrogaron en los derechos de los obreros; mas como el derecho de subrogación que la ley concede al fiador no es efectivo hasta que éste haya satisfecho todas las obligaciones garantizadas por la fianza, estando los créditos de los prestamistas garantizados por la fianza a virtud de la subrogación en los derechos de los obreros, resulta claro para la corte inferior que el derecho de los prestamistas con relación al

fondo en poder del Municipio es preferente al reclamado por la fiadora; y

(b) que independientemente del derecho de subrogación invocado por los prestamistas, sus créditos están garantizados por la fianza.

Dada la conclusión a que habremos de llegar, invertiremos el que de otro modo sería el orden lógico de la discusión.

I. ¿Existe en este caso el derecho de subrogación invocado por los prestamistas?

Para sostener que existe ese derecho, la corte invoca los siguientes artículos del Código Civil:

"Art. 1112: Puede hacer el pago cualquier persona, tenga o no interés en el cumplimiento de la obligación, ya lo conozca y lo apruebe, o ya lo ignore el deudor.

"El que pagare por cuenta de otro podrá reclamar del deudor lo que hubiese pagado, a no haberlo hecho contra su expresa voluntad.

"En este caso sólo podrá repetir del deudor aquello en que le hubiera sido útil el pago."

"Art. 1164: Se presumirá que hay subrogación:

"1.    *    *    *    *    *    *    *

"2.   Cuando un tercero, no interesado en la obligación, pague con aprobación expresa o tácita del deudor.

"3.    *    *    *    *    *    *    *"

"Art. 1166: La subrogación transfiere al subrogado el crédito con los derechos a él anexos, ya contra el deudor, ya contra los terceros, sean fiadores o poseedores de las hipotecas."

Los artículos antes transcritos no sostienen la conclusión a que llegó la corte sentenciadora. El primero, el 1112, trata de las personas que pueden hacer el pago. El tercero, el 1166, trata de los efectos de la subrogación, y el segundo, el 1164, inciso 2, se refiere a la subrogación que presume la ley cuando un tercero, no interesado en la obligación, *pague con aprobación* expresa o tácita *del deudor*.

El inciso 2 del artículo 1164 claramente se refiere al pago directamente hecho por el tercero al acreedor con aproba-

ión expresa o tácita del deudor. Pero en el presente caso
i el Crédito y Ahorro Ponceño ni Miguel A. Roura pagaron
us acreencias a los obreros. Lo que en efecto hicieron fué
restar dinero al deudor para que éste pagase a los obre-
os, y como el artículo 1163 del mismo cuerpo legal expresa-
nente prescribe que la subrogación de un tercero en los de-
echos del acreedor no puede presumirse fuera de los casos
xpresamente mencionados en dicho código, es manifiesta la
naplicabilidad del precepto legal invocado por la corte y
por los apelados. No comprendemos cómo la corte hizo caso
omiso del artículo 1165 del Código Civil, y nos parece muy
significativo que no obstante discutirlo ampliamente en su
alegato la apelante, los apelados en el suyo guarden abso-
uto silencio sobre el citado artículo, que sin duda contiene
a ley aplicable al caso. Dice así:

"Art. 1165. El deudor podrá hacer la subrogación sin consen-
timiento del acreedor, cuando para pagar la deuda haya tomado pres-
tado el dinero *por escritura pública, haciendo constar su propósito
en el'a, y expresando en la carta de pago la procedencia de la cantidad
pagada.*" (Bastardillas nuestras.)

Como la subrogación de un tercero, conforme hemos
visto, no puede presumirse fuera de los casos expresamente
mencionados en el Código Civil, es obvio que para que tenga
efecto la descrita en el artículo 1165, precisa ajustarse a las
condiciones de dicho artículo, es decir: (1) que el crédito se
formalice por escritura pública; (2) que se consigne que el
dinero se ha tomado para pagar la deuda, haciendo constar
su propósito en la escritura; y (3) que se exprese en la carta
de pago la procedencia de la cantidad pagada.

¿Se cumplieron en este caso estos requisitos? En primer
término los contratos de préstamo no fueron formalizados en
escritura pública, y en segundo lugar, si bien se hizo constar
que el dinero se había tomado para el pago de los jornales,
no se extendió carta de pago haciendo constar la procedencia
de la cantidad pagada.

Comentando el mismo artículo, que en el Código Civil es
pañol lleva el número 1211, dice Manresa:

"El Código exige para esta especial subrogación que concurran
precisos requisitos, determinados con toda claridad, y en los cuales
no se sigue la regla general de que la novación no exige forma solemne
ya que en este caso se hace indispensable, y aun más, se necesita que
en ella conste la expresión del destino que debe darse al dinero, y
luego, al pagar, la procedencia de éste.

"El primero de los requisitos es que el préstamo del dinero para
realizar el pago se verifique mediante escritura pública, y ocurre
preguntar si no procederá la subrogación cuando por la premura del
pago o cualquier otro motivo no se hubiera otorgado dicha escritura
antes de recibir el deudor el préstamo; en nuestra opinión, el caso
está comprendido en el general de exigir la ley una forma deter-
minada para hacer efectivas las obligaciones propias de un contrato,
y por tanto, podrá compeler el prestamista al deudor para que con-
curra al otorgamiento de la correspondiente escritura, pero bien
entendido que ésta deberá hacerse antes que el pago al acreedor,
momento distinto del préstamo y la entrega al obligado. Nos fun-
damos para ello en que la ley, al exigir la autenticidad, tiene en
consideración a aquel acreedor de cuyo consentimiento se prescinde,
y además en que si no concurrían los requisitos de la subrogación al
tiempo de hacerse el pago, se extinguiría por éste la obligación y
cabría contraer una distinta, pero no continuar aquélla mediante la
novación.

"Los otros dos requisitos, de que se exprese en la escritura de
préstamo el fin de éste, y en la carta de pago la procedencia del
dinero, no ofrecen dificultad, siendo de notar en cuanto al último,
que tendiendo a garantizar los derechos del mutuante, tiene éste el
de concurrir al acto del pago y exigir, fundándose en la expresión
consignada en la escritura de préstamo que se declare en la carta
de pago la afirmación que le asegura la subrogación.

"La carta de pago, encaminada a corroborar el derecho que
declara la escritura de préstamo, convendrá en general que sea tam-
bién un documento público; pero la ley no lo exige como para
aquélla y podrá ser un resguardo particular cuando la deuda pagada
y novada no tuviera su origen o reconocimiento en escrituras."
Comentarios al Código Civil, tomo 8, ed. 1907, págs. 441-2.

Refiriéndose a esta subrogación, Scaevola, en sus Comen-
tarios al Código, tomo 19, pág. 1049, dice que las condiciones

en que se debe hacer son muy claras y están copiadas de las del Código Napoleón. En efecto, al tratar de esta subrogación en el inciso 2 del artículo 2160, el Código Civil de Luisiana prescribe que para que esta subrogación sea válida es necesario que el acto del préstamo y el del recibo se ejecuten en presencia de un notario y dos testigos; que en el acta del contrato de préstamo se haga constar que la cantidad fué prestada para verificar el pago y que en el recibo se consigne que el pago se ha llevado a efecto con el dinero facilitado con ese objeto por el nuevo acreedor. Véanse por vía de ilustración los casos de *Bank of Bienville* v. *Fidelity & Deposit Co. of Md. et al.*, (La. 1931) 135 So. 26; *Lane* v. *E. J. Deas Co.*, (La. 1929) 125 So. 514; *State* v. *Smith*, 119 So. 56, 64.

Anotando el artículo 1211 del Código Civil de Cuba, idéntico al que discutimos, el tratadista Eduardo Rafael Núñez y Núñez, en su obra "Código Civil", tomo 5, pág. 431, extractando la sentencia del Tribunal Supremo de Cuba, de 4 de marzo de 1914, número 17, dice lo siguiente:

"Para que un prestamista pueda subrogarse en lugar del acreedor, cuando la cantidad prestada se haya aplicado al pago de una deuda, es indispensable, conforme al artículo 1211 del Código Civil, que se haya tomado el préstamo por escritura pública expresando en ella el deudor su propósito de aplicar la cantidad prestada a la extinción de la deuda y que en la carta de pago conste la procedencia de la cantidad pagada."

No pudiendo los prestamistas subrogarse en los derechos de los obreros, procede discutir ahora el segundo fundamento de la sentencia, a saber:

II. ¿Están los créditos de los prestamistas garantizados por la fianza?

El juez inferior llegó a la conclusión de que lo estaban, interpretando una cláusula de la fianza para la ejecución de la obra (*Performance Bond*) que aparece en la página 100 de la Transcripción de Evidencia, y que refiriéndose a la obligación de la fiadora dice así:

". . . y prontamente pagará a todas las personas que le suministren (refiriéndose al contratista) trabajo o material en la prosecución de la obra a que se refiere este contrato." (Paréntesis nuestro.)

La corte inferior interpreta dicha cláusula en el sentido de que incluye a cualquier cesionario del contratista que le haya suministrado fondos para el pago de trabajo o materiales. Para llegar a esa conclusión recurre a la cláusula (*d*) que aparece en las instrucciones preparadas para la interpretación de la fianza denominada *"Labor Bond"*, cláusula que literalmente copiada dice así:

"(*d*) As used herein, the term 'persons' refers to any person engaged in the prosecution of the work provided for in said Contract or in any amendment or extension of or addition to said Contract, who is an agent, servant, or employee of the principal, or of any subcontractor, or of any assigned (assignee) of said Principal or of any subcontractor, and also anyone so engaged who performs the work of a laborer or of a mechanic regardless of any contractual relationship between the Principal, or any subcontractor, or any assignee of said Principal or of said subcontractor, and such laborer or mechanic, but shall not include office employees not regularly stationed at the site of the work " (Paréntesis nuestro.)

Después de transcribir la cláusula indicada, se dice en la opinión de la corte inferior:

"De manera que, de acuerdo con esta interpretación del vocablo 'persons', usada en esta cláusula de la fianza prestada por la demandante, que aparece de la evidencia presentada por la propia demandante, es claro que la demandante se obligó a pagar cualquier reclamación por salarios a cualquier cesionario del principal en el contrato, y ya sabemos que el principal en el contrato no es otro que el contratista Lluch & Rodríguez, según la propia fianza copiada en la demanda. Así, pues, con entera independencia del derecho de subrogación, por los propios términos del contrato con toda su documentación, presentado en evidencia por la demandante, expresamente se conviene en que la demandante, como fiadora, había de pagar a todo el que suministrara salario para la obra y a todo el que fuera cesionario en el cobro de dichos salarios, ya del obrero, ya del principal o contratista."

La cláusula en cuestión, traducida al castellano, dice así:

"(d) Según se usa aquí, el término 'personas' se refiere a cualquier persona dedicada a la prosecución de la obra provista en dicho Contrato o en cualquier enmienda o ampliación de o adición a dicho Contrato, que sea un agente, sirviente, o empleado del principal, o de cualquier subcontratista, o de cualquier cesionario (*assignee*) de dicho principal o de cualquier subcontratista, y también cualquier persona así dedicada que realiza el trabajo de un obrero o de un mecánico, independientemente de cualquier relación contractual entre el principal, o cualquier subcontratista, o cualquier representante de dicho principal, o de dicho subcontratista, y tal obrero o mecánico, pero no incluirá empleados de oficina que no estén regularmente estacionados en el sitio de la obra." (Paréntesis nuestro.)

Leyendo cuidadosamente la cláusula que acabamos de traducir, se llega a la conclusión de que la palabra "*persons*" en ella usada se refiere a personas que han trabajado personalmente en la prosecución de la obra como obreros o mecánicos, agente, sirviente o empleado del contratista o del subcontratista o del cesionario de cualquiera de éstos, exista o no relación contractual entre el obrero o mecánico y dichas personas. Es igualmente claro, a nuestro juicio, que la frase "todas las personas que le suministren (refiriéndose al contratista) trabajo o material en la prosecución de la obra a que se refiere este contrato", no incluye aquéllas que como los prestamistas en este caso sólo se limitaron a facilitar dinero al contratista para pagar jornales de los obreros. A este efecto se dice en la monografía que sobre la materia aparece en 127 A.L.R. 974, 976:

"La regla bien establecida es que una reclamación por dinero prestado o facilitado a un contratista que construye una obra, no está protegida por la forma ordinaria de la fianza del contratista en que se garantiza la fiel ejecución de la obra y el pago de todas las reclamaciones por trabajo y materiales, aunque el dinero prestado haya sido totalmente aplicado al pago del costo de los jornales y materiales actualmente invertidos en la construcción del proyecto."

Como descartada la preferencia que alegan tener los prestamistas, resulta de los autos que todas las reclamaciones preferentes que pudieran existir contra el fondo en poder del municipio han sido satisfechas por la fiadora, *procede revocar la sentencia declaratoria apelada, y en su lugar dictar otra declarando que la fiadora apelante se ha subrogado en los derechos de los proveedores de materiales y de los obreros, y consiguientemente tiene preferencia como tal fiadora al cobro de la suma de $4,510.19 satisfecha por ella en su carácter de fiadora por cuenta de los principales en la fianza, José C. Lluch y Nicanor Rodríguez, haciendo negocios bajo el nombre de Lluch & Rodríguez. Se imponen las costas a los demandados Crédito y Ahorro Ponceño y Miguel A. Roura.*