Plaintiff, Rudolph Stein, has appealed from a judgment of the lower court maintaining an exception of no cause of action and dismissing his suit.
The suit is for $120.38, the cost of repairing plaintiff's automobile which he alleged was damaged in a collision with a truck of Williams Lumber Company, a partnership and also for commissions of $179.62 which he allegedly lost by reason of being unable to use his car whilst the repairs were being made. The lumber company and its individual partners are made defendants in the suit.
During the course of the trial in the First City Court of New Orleans plaintiff, on cross examination, admitted that his automobile was covered by insurance; that he had been paid by the insurer, Albany Insurance Company, eighty per cent of the damages to the car, and that he executed a subrogation to the insurance company. It was conceded by all parties that a few days after the insurance loss was adjusted, the attorneys for the insurer notified Williams Lumber Company that the Albany Insurance Company had referred to them for attention its claim "under subrogation" and demanded of defendants payment of the sum of $120.38.
The defendants then interposed a verbal exception of no cause of action which was maintained by the lower court, and the suit was dismissed.
The only testimony regarding payment by the insurer was given by plaintiff, and he stated that under the terms of the policy the insurance company was obligated to pay eighty per cent of the loss. He admitted the subrogation, but this document is not a part of the record and we are unable to know whether plaintiff assigned his claim for all damage to the car, or whether the subrogation covered only eighty per cent thereof.
Plaintiff contends that under the holding of the Supreme Court in the case of Hanton v. New Orleans C. R. Light 
Power Co., 124 La. 562, 50 So. 544, 547, the court below was in error in maintaining the exception, as he had a perfect right to *Page 63 
proceed with his suit for the whole claim, both for injury to the automobile and loss of commissions, notwithstanding the subrogation of a part of the claim.
In the cited case, the plaintiffs' property, valued at $26,785.53, was destroyed by a fire allegedly caused by the negligence of the light and power company. Plaintiffs held policies of fire insurance and had collected from the insurers the sum of $18,500, the amount to which they were entitled under the policies, and by way of subrogation transferred to the insurers the claim against the alleged tort feasor, up to the amount of those payments. Plaintiffs, without referring in any manner in their pleadings or otherwise to the fact that they had been paid the insurance, or that they had given subrogations to the insurance companies, brought suit against the light and power company for the full amount of the loss, to wit: $26,785.53. During the trial it was shown that plaintiffs had received the $18,500 from the insurers and had subrogated them pro tanto to the claim against defendant. Counsel for the defendant company thereupon immediately suggested to the court that plaintiffs' claim should be considered as having been reduced by the amount which they had received from the insurers, and that they should not be permitted to claim any part of that amount, either on their own behalf or as representatives of the said insurers. This suggestion, which the court treated as an exception, was overruled and plaintiffs recovered judgment for the full amount of the loss. The matter was appealed to the Supreme Court and the judgment was affirmed. The Court said that even though the claimants had been paid the greater portion of their loss by the proceeds of the insurance policies, inasmuch as they had retained against the tort feasor a claim for the unpaid portion of the loss, they might assert their claim for that balance, and might also, in the same suit, make claim for that portion of the loss for which they had been paid, and it would be assumed that in asserting the full claim they were acting for the subrogated insurers for the amount of the insurance paid. The Court said: "Defendant, with knowledge of this condition directly brought home to it, did not claim to have any defenses against the insurance company which would be cut off by the manner in which the suit was brought, nor does it claim now that it has been, in fact, in any way injured. It relies entirely upon the fact itself and the position claimed by it that, as a matter of law, plaintiffs should have been limited in the suit to prosecuting what portion of the original demand remained due to themselves. The effect of this would have been to have required that one single cause of action should be split into a number of actions, each action being by the assignee of a particular portion of the loss. Had the different parties partially interested in the loss brought separate actions, we think it can be safely assumed that the defendant would have urged as a legal proposition that the plaintiffs had no right to divide one single cause of action into a number to suit his convenience or his interests. As matters stand, we do not think defendant sets up any just cause for complainant."
Counsel for defendants contend that the Hanton case is to be distinguished from the one now being considered, and that the case of Dupuy v. Graome Spring Brake Service, La. App.,19 So.2d 657, 659, is controlling. They argue that where an insured is paid the loss by his insurer, and the tort feasor has been formally notified of a subrogation, the original creditor, the insured, has no further interest to warrant his prosecution of the claim for damages against the tort feasor. They direct attention to the following language used in the Dupuy case: "But as we now view and interpret the Hanton case and other Louisiana decisions, we think that it is clear that even though an automobile owner, whose car has been damaged by a tort feasor, has received from his insurer the total amount of his claim for damage, he may, nevertheless, maintain against the tort feasor a claim for the damage provided the tort feasor has not been formally notified that the claim has been assigned to someone else. * * *"
As we have already said, the record does not disclose the proportion of the claim assigned to the insurance company. However, it is certain that the loss of commissions *Page 64 
was not included, and at least to that extent plaintiff retained a claim against defendants. Defendant's counsel concede this. In the Dupuy case we observed that where the owner of the automobile had received from and subrogated to his insurer the total amount of his claim for damages, he could still maintain the claim against the tort feasor, provided the latter had never been formally notified of the subrogation. We did not say, nor have we been able to find any authority which says, that where only a portion of the claim has been subrogated, even if followed by formal notification to the tort feasor, that the original claimant cannot maintain an action for the full amount of the damages. We adhere to what was said in the Dupuy case. Had the present plaintiff assigned his full claim, including both damage to the automobile and loss of commissions, and had the defendants been formally notified of the subrogation, in that event the plaintiff would have had no further right or interest to prosecute a suit or to stand in judgment.
[1] A debt is indivisible without the consent of both parties, and a debtor cannot be compelled to pay his debt to a number of transferees among whom it may please the creditor to divide it, and a subrogation of a part of the debt is not binding on the debtor without his consent. C. C. arts. 2111 and 2153; Lane v. Deas Co., 12 La. App. 382, 125 So. 514; Red River Valley Bank Trust Co. v. Louisiana Petrolithic Const. Co.,142 La. 838, 77 So. 763; Hanton v. N. O. C. R. Light Power Co., supra; Meyer v. V. S. P. RR Co., 35 La. Ann. 897; Cantrelle v. LeGoaster, 3 Rob. 432; LeBlanc v. Parish of East Baton Rouge, 10 Rob. 25; King v. Havard, 5 Mart., N.S., 193; Miller v. Brigot, 8 La. 533.
In the case of Lane v. Deas Co., supra, the court said [12 La. App. 382, 125 So. 517]: "Viewed in the most favorable light from plaintiff's standpoint, this was a transfer of only part of a debt. The police jury, not having assented to the transfer, is not bound."
In the syllabus of Red River Valley Bank Trust Co. v. Louisiana, etc., supra, the Supreme Court said [142 La. 838,77 So. 763]: "An assignment, by a contractor, of a portion of the contract price, due or to become due under a contract for the building of a public road in a parish, imposes no obligation upon the parish, as the other contracting party, unless consented to by it."
The following language was used in the case of Miller v. Brigot, supra: "In answer to this proposition, it suffices to say, that no debtor, is bound to pay a debt by portions, and it follows as a corollary, that no partial transfer can be made by a creditor, so as to be binding on a debtor, even when notice is given, except by express consent of the latter. * * *"
The Court said in Cantrelle v. LeGoaster, supra: "* * * The provisions of the Code relied on by the appellee's counsel, and to be found in the chapter which treats of the assignment and transfer of debts, must be understood as applying only to entire debts, rights, and claims; and cannot be made to interfere with another express enactment in the same work, which declares that an obligation, susceptible of division, must be executed between the creditor and the debtor, as though it were indivisible. If a creditor cannot claim the payment of a debt by portions, it is clear that transferees, claiming under him, cannot exercise such a right. * * *"
[2, 3] In the case at hand, there was only one debt and one cause of action, and the partial subrogation to which they never consented, notwithstanding notice, was in no wise binding upon the defendants. It necessarily follows, therefore, that they, the defendants, cannot successfully urge that plaintiff is bound by it, nor can they use it as a shield against plaintiff's suit for the whole debt. As to the effects of the subrogation as between plaintiff and his subrogee, that is a matter to be regulated between themselves, and is no concern of defendants.
For the reasons assigned, the judgment of the lower court is reversed and the exception of no cause of action is overruled, and the matter is remanded to the court below for a trial on its merits in accordance with law. Costs of this appeal are to be *Page 65 
paid by defendants-appellees; all other costs are to await the final determination of the matter.
Reversed and remanded.