C. ROMAN and C. A. KERNION *v.* L. E. and F. J. FORSTALL.

A third person, not bound for a debt, who pays it in discharge of the debtor, and receives at the time from the creditor a subrogation to his rights, can receive from the debtor only the amount so paid to the creditor. *Aliter*, if the transfers from the creditor were made in virtue of a sale or donation.

**C. C. 2278.**

APPEAL from the Fifth District Court of New Orleans, *Augustin*, J. *Roselius* and *Fitz*, for plaintiffs. *E. A. Bradford* and *L. Hunton*, for defendants and appellants.

BUCHANAN, J. Defendants and appellants complain of the following charge of the District Judge to the jury: "That, according to law, (C. C. 2130,) *Edmond J. Forstall*, having acted for the benefit of the firm, (of *Roman, Forstall & Co.*) was only subrogated for what he paid."

There was no error to the prejudice of the defendants in this charge.

The notarial act of the 28th February, 1846, was a compromise of debts due by various parties to the Citizens' Bank. The parties to the act were the Bank, through its President, and *Edmond J. Forstall*. It sets forth, that *Edmond J. Forstall*, "desiring, by means of a compromise, to arrive at a *final settlement* of the balance of the debts due to the Citizens' Bank by the late *Madame Widow Poeyfarré, Messrs. Forstall Brothers* and *Messrs. Forstall, Roman & Co.*, which debts amount, in capital, interest and costs, to $31,854 20," according to a detailed statement which follows, "has proposed to the said Citizens' Bank, in order to obtain *the full and entire discharge*, in favor of the succession of *Madam Widow Poeyfarré*, of *Messrs. Forstall Brothers*, and of *Messrs. Forstall, Roman & Co.*, and of the other parties to the notes and drafts above described, with the exception of *Lancaster, Derby & Co.*, (acceptors of the drafts of *Forstall, Roman & Co.*) against whom (*L., D. & Co.*) the Bank reserves all its rights, of all the rights, titles and claims which the said Bank might exercise against the parties to the stock notes, notes or drafts above described, to give to the Bank, in payment of the said sum of $31,854 20, four lots of ground, situated in the faubourg Delord, of the Second Municipality of New Orleans," of which lots the description follows. "That the Bank accepts the proposition" for reasons stated. "Consequently the said *Edmond J. Forstall*, as a *dation en paiement* of said sum of $31,854 20, gives, cedes, transfers and abandons to said Bank, with all legal warranties, four lots of ground," as described.

The act proceeds: "This *dation en paiement* is made by the said *Edmond J. Forstall*, to the effect of obtaining from the Citizens' Bank of Louisiana, *the full and entire discharge*, in favor of the succession of the late *Widow Poeyfarre*, of *Messrs. Forstall Brothers*, and of *Messrs. Forstall, Roman & Co.*, and of the other parties to the notes and drafts above described, (except *Lancaster, Derby & Co.*, the acceptors of the said drafts, against whom the Bank preserves all its rights,) of all the rights, &c., which the Bank could exercise against those parties, and to liberate them, towards the said Bank, from the said sum of $31,854 20. Consequently the said *H. B. Cenas*, in his quality of President of the Bank, consents to a *full and entire discharge*, (repeating the words of the preceding clause,) and liberates them (the succession of *Widow*

*Poeyfarré, Forstall Brothers,* and *Forstall, Roman & Co.,) entirely and finally* from the sum of $31,854 20, balance due by them as drawers or endorsers upon the notes and drafts above described; only reserving a recourse for payment of the two drafts of *Forstall, Roman & Co.* against *Lancaster, Derby & Co.,* of Richmond, the acceptors of the said two drafts."

" And in consideration of the aforesaid *dation en paiement,* the said *Cenas,* in his capacity of the President of the Bank, subrogates the said *Edmond J. Forstall,* but without any warranty whatever on the part of the Bank, to all the rights, titles and claims, such as they are, which the Bank has or might exercise against the parties to the said notes and stock notes."

" The said *Cenas,* in his quality aforesaid, now delivers to the said *Edmond J. Forstall,* who acknowledges it, the stock notes and notes above described. And the undersigned notary, after having made mention, at the request of the said *Forstall,* upon the face of the said two drafts, of the discharge consented to by the Citizens' Bank, in favor of *Forstall, Roman & Co.* as drawers, and of the succession of *Widow Poeyfarré* as endorser, of the said two drafts, has delivered the said two drafts to the said *Cenas,* in his quality of President, who acknowledges it."

It is to be observed that *Edmond J. Forstall* does not appear to have been personally bound for any of the debts included in this compromise.

It is further to be observed that several of those debts due by the *Widow Poeyfarré,* and by *Forstall Brothers,* were secured by mortgages.

It is proved that the four lots of ground thus transferred by *Edmond J. Forstall* to the Bank, realized to that institution a sum of ten thousand dollars; and the defendants have been credited in settlement of partnership with plaintiffs, by the auditors and by the special jury of merchants, who passed upon this case in the District Court, with the sum of $3464, as a proportion of said sum of $10,000, equivalent to the obligations of *Forstall, Roman & Co.* included in the act of compromise with the Citizens' Bank. Those obligations are stated by the auditors to amount to $12,994, composed of the following items :

1st. A note of *F. R. & Co.,* endorsed by *Widow Poeyfarré*........ $6,784
2d. A note of *G. A. Durell,* endorsed by *F. R. & Co*.............   6,210
$$\overline{\phantom{xxxxxxxx}}$$
                                     $12,994

We turn to the consideration of the argument, as presented to us by the learned counsel, on the legal effect of the act of compromise of 28th February, 1846.

The argument assumes that $12,994 was the amount of *Forstall, Roman & Co.'s* indebtedness to the Citizens' Bank, settled by that compromise; and it is contended, on behalf of the defendants and appellants, that they are entitled to a credit, in settlement of the partnership, for the whole of that amount as transferrees of the rights of *Edmond J. Forstall* under the notarial act in question.

Taking for granted, *argumente gratiâ,* that defendants are such transferrees, (although there is no proof of any transfer of *E. J. Forstall's* rights to them,) the position of defendants appears identical, in all its essential features, with that of the plaintiff in a suit decided by the Court of Cassation in the year 1810, and reported at length by Merlin in the Questions du Droit, *verbo* Subrogation de Personne, paragraph 1.

In that case a third party (*Bellanger*) paid a debt, consisting of the capital and arrears of interest of an annuity secured by first mortgage upon a property, on which *Bellanger* held a second mortgage. The creditor and first mortgagee, by the terms of a notarial act, in consideration of said payment by *Bellanger*, consented in favor of his debtor a full acquittance and discharge of the debt, and subrogated *Bellanger* to all his rights, actions, privileges and mortgages against the debtor. The payment was made in depreciated government paper, (*assignats nationaux*,) which the creditor received from *Bellanger* at par. Several years afterwards *Bellanger* sued the debtor for the total amount of interest of the annuity, calculated to the date of the institution of suit, claiming to be the holder and owner of the annuity, in virtue of the subrogation which he had received from the creditor and first mortgagee. But the debtor tendered in court, in full satisfaction of plaintiff's legal rights against him, the amount really paid by *Bellanger* to his creditor, being the actual cash value at the time of payment of the *assignats* with which that payment had been made. And the Court of Cassation decided, in affirmance of the judgments both of the court of the first instance and of the court of appeal, that the real tender was good and sufficient; that *Bellanger* was only entitled to a reimbursement of the amount by him actually paid, and that the effect of the clause of subrogation in his act was not to revive for his benefit a debt extinguished by the very terms of the act, but only to substitute the subrogee in all the mortgages and privileges held by the original creditor for the reimbursement of the sum paid to the discharge of the debtor.

The doctrine of this *arrêt* of the Court of Cassation is that of the Roman and French law and of all the commentators. The contrary doctrine, which is that of the defendants in this cause, arises from a confusion of *subrogation* with *cession* or *transfer*. But all the authorities agree that these legal terms are not synonimous. See Merlin, Repertoire de Jurisp., *verbo* Subrogation, and the authorities collected by the same author in his Questions de droit, *loco citato*, and by Zachariæ, Droit Civil Français, 2d vol., par. 321.

Payment is a mode of extinguishing a debt. Subrogation is a fiction of law, originating in the 26th law of the Roman Digest, title "*de fidijussoribus et mandatoribus*," by which the creditor who grants the subrogation to another who pays, "*non in solutum accipit, sed quodammodo debitoris nomen vendidit,*" whence the maxim of the civilians, "*subragatus magis omissi nomen, quàm solvissi videtur.*"

"La subrogation," says Marcadé, vol. 4, § 708, "n'étant point un achat de la créance, puisqu'elle suppose, au contraire, que cette créance est payée, et par conséquent éteinte, il s'ensuit que si cette subrogation avait été consentie pour une somme moindre que le montant de la créance, le subrogé, au lieu de pouvoir réclamer au debiteur le montant intégral de la créance, comme le pourrait un cessionnaire, ne pourrait lui demander que la somme qu'il aurait déboursée. En effet, quand j'achète une créance, c'est cette même créance qui m'appartient, quelque soit d'ailleurs le prix pour lequel je l'ai achetée, et c'est cette même créance que j'ai à recevoir contre le débiteur. Il en serait de même, si la créance m'avait été cédée gratuitement, puisqu'alors j'ai bien la créance qu'avait le précédent créancier. Mais quand, au contraire, jai fait un paiement avec subrogation, le paiement ayant éteint la précédente créance, ce n'est plus elle qui m'appartient, c'est une créance nouvelle, résultant de ce que j'ai fait un déboursé pour le profit du débiteur. Je ne'

puis donc réclamer que ce déboursé, et non pas une ancienne créance, qui n'existe plus. Si pourtant," continues Marcadé, "dans le cas d'un déboursé moindre que le montant de la créance, il résultait clairement, soit des termes de l'acte, soit des circonstances, que l'intention du créancier et du tiers, a vraiment été que ce dernier eût la créance entière, il faudrait bien respecter cette volonté des parties; mais on ne pourrait le faire, qu'en reconnaissant que les parties, nonobstant les termes inexacts dont elles ont pu se servir, ont fait une véritable cession, et non un paiement avec subrogation."

The excepted case, supposed by Marcadé, certainly is not found in this record. The terms of the act, so far from expressing a transfer of the whole credit by the Citizens' Bank to *Forstall*, express, with studied precision, in no less than three distinct places, the full and entire acquittance and discharge of the debtors, *Forstall, Roman & Co.* And as to the circumstances surrounding the transaction, we find it asserted in the notarial act itself, as well as in the resolution of the Board of Directors of the Bank which authorized the President to accept the terms of compromise offered, that the personal securities of the debts thus discharged are null, either because the debtors have failed or because they are entirely unable to pay their debts, ("dans l'impossibilité de s'acquitter de leurs engagemens." Even were the terms of the notarial act, discharging *Forstall, Roman & Co.*, less clear than they are, it could not be supposed, in the face of the clause just copied from the act, that the respectable parties to this notarial act contemplated a speculation upon two of the four partners of this insolvent concern, for the benefit of the other two partners, by a cession of the whole credit for one-third of its face, to two out of the four solidary co-debtors, through a person interposed. We are persuaded that we truly construe the intention of those parties, in deciding that they meant what they have said, a full, final and entire discharge of *Forstall, Roman & Co.*, and of each of the partners of that firm, in consideration of the property transferred to the Bank by *Mr. Edmond Forstall.* The copy of the minutes of the Bank was properly admitted in evidence, at least to elucidate the intention of the Bank, and after the call made by plaintiffs for the production of *Mr. E. J. Forstall's* letter to the Bank, it was also good as secondary evidence of the contents of that letter.

From the facts and circumstances of the case, as well as from the expressions of the notarial act of the 28th February, 1846, it clearly appears that *Edmond J. Forstall* acted, in the words of the charge to the jury, *for the benefit of the firm of Forstall, Roman & Co.*, or in the words of Article 430 of the Code, *for the discharge of the debtor.* From the payment thus made, and the discharge of *Forstall, Roman & Co.*'s previous engagements to the Citizens' Bank, has arisen a new engagement towards *Edmond J. Forstall*, or to those who may be in his rights. That engagement imposes upon *Forstall, Roman & Co.* the obligation of reimbursing to *E. J. Forstall* or his assigns, all that he has paid for them. And this obligation flows, not from a contract, because contracts are only formed by the agreement or convention to which *Forstall, Roman & Co.* were parties. But it takes its course in equity, which forbids one to enrich himself to the prejudice of another, or that services rendered should be onerous to those who have rendered them. There has then intervened here a *quasi contract*, from which have resulted mutual rights and actions, which the Roman law calls *negotiorum gestorum.* *Mr. Edmond J. Forstall* has been in this transaction a *negotiorum gestor*, since, without a mandate, he has

managed the business of *Forstall, Roman & Co.* All that he (or his assigns,) can ask, then, is to be indemnified for all the useful and necessary expenses which he has incurred. C. C. 2278, Inst. Just. § 1, de obl. quæ quasi ce contractu; Dig. de Negitüs gestis; Merlin Qu. de Dr., vol. 14, p. 389.

We find no error in the allowance made by the auditors and by the jury of discount upon the notes of defendant running from one to ten years, given to the Consolidated Association by the contract of 19th November, 1846, in exchange for the endorsement of *Forstall, Roman & Co.*, past due and protested.

It is, therefore, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.