(42 South. 766.)

No. 16,177.

COOPER et al. v. JENNINGS REFINING CO.

(Jan. 7, 1907.)

1. CORPORATIONS—SUBSCRIPTION—PAYMENT.

Money sent to a company in payment of the sender's subscription to its stock does not cease to be a payment, and become a loan, or otherwise create an indebtedness on the part of the company, from the fact that the company neglected to deliver the certificate of stock for which the money was paid, or even to give a receipt.

2. SUBROGATION—WHAT CONSTITUTES.

When article 2160, Civ. Code, says of conventional subrogation that "it must be made at the same time as the payment," it simply means that the agreement of subrogation cannot be entered into after the payment. It does not mean that it cannot be entered into before the payment, as where the agreement is that, in case the party pays the debt at any time in the future, he shall be subrogated to all the rights of the creditor. Where the distinct understanding is that the payment will be made only on the condition of subrogation, the mere sending of a check in payment of the debt, without anything further being said about subrogation, will operate the subrogation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Subrogation, § 68.]

(Syllabus by the Court.)

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Edmund Dennis Miller, Judge.

Action by John M. Cooper and N. S. Wisenhurst against the Jennings Refining Company, in which John D. Bell intervened as third opponent. From the judgment rendered plaintiffs appeal. Affirmed.

McCoy & Moss and Robert Lewis Knox, for appellants. Charles Frank Borah and Pujo, Moss & Sugar, for appellee Bell.

PROVOSTY, J. Certain piping belonging to the defendant company has been seized and sold under a fi. fa. in this case, and the third opponent claims that he has by subrogation a vendor's privilege on the proceeds, which entitles him to be paid by preference.

The sole question in the case is whether the third opponent was subrogated to the rights of the vendor of the piping.

The facts are that, the defendant company having failed to meet the first payment on the purchase of the said piping and the vendor refusing to deliver same, the third opponent agreed verbally to guaranty the payment, provided that should he pay the debt he should be subrogated to all the rights of the vendor, and some time afterwards he paid the debt, by simply sending his check for the amount, without anything further being said about the subrogation.

By a supplemental petition the third opponent claims that he was a creditor of the defendant company at the time of the payment, and that therefore he has been doubly subrogated; that is to say, both by the effect of his said express agreement and by operation of law.

For thus claiming to have been a creditor at the time of the payment, the third opponent bases himself on the fact that he sent $300 to the defendant company in payment of his stock subscription, and that no certificate of stock was ever issued to him, or even any receipt given him. But evidently the $300 went to pay third opponent's debt on his stock subscription, and did not create an indebtedness on the part of the defendant company. The issuance of a receipt or certificate of stock would only have furnished evidence of the payment. The nonissuance of same does not alter the situation. Cook on

Corp. (4th Ed.) § 192; Angell & Ames on Corp. § 565; Elliott on Corp. §§ 80, 81.

But, the third opponent having agreed to pay the debt only on condition that he should be subrogated, he was ipso facto subrogated when he made the payment. The thing having been understood and agreed upon, it was not necessary to have any further agreement on the subject at the time of the payment. The payment was made in accordance with the agreement; that is to say, with subrogation.

We do not see why this agreement could not be made verbally, or, which is the same thing, could not be proved by parol. The Code does not require that conventional subrogation of a debt shall be proved by writing. True, an agreement to pay the debt of a third person cannot be proved by parol; and true, also, in this state, differently from what obtains under the statute of frauds, this rule against parol evidence in such a case is a law of public order which the courts are bound to enforce, even in the absence of objection (Merz v. Labuzan, 23 La. Ann. 747; Hill v. Ober Atwater & Co., 24 La. Ann. 325; Levy & Dieter v. Du Bois, 24 La. Ann. 401; Baker v. Pagaud, 26 La. Ann. 221; O'Hara v. Folwell, 26 La. Ann. 373; Succession of Edwards, 34 La. Ann. 232; Coyle v. Succession of Creevy, 34 La. Ann. 543; Succession of Gaines, 45 La. Ann. 1424, 14 South. 251), and which, therefore, may be invoked by any one having an interest, and not alone by the person sought to be held on such an agreement; but in this case the agreement sought to be proved is not one to pay the debt, but one for the subrogation of the third opponent in case he paid the debt. The agreement to pay the debt has been fulfilled, and is not now sought to be enforced or relied upon for any purpose. It plays no part in the case. The question is simply whether, when the third opponent paid the debt, he did so with the express understanding that he was being subrogated to all the rights

of the vendor. The purpose of the evidence is to prove subrogation, and not an agreement to pay the debt. The agreement to pay the debt is a mere collateral incident, separable from the subrogation. A person may, without binding himself to pay a debt, stipulate that, in case he does pay it, he shall be subrogated to all the rights of the creditor. Where such an agreement has been made, the subrogation takes place as a necessary effect of it at the time of the payment. When article 2160, Civ. Code, says of conventional subrogation that "it must be made at the same time as the payment," it does not mean that the agreement of subrogation cannot be entered into before, or in anticipation of, the payment, but simply that it cannot be entered into after the payment. "Rien ne s'oppose à ce que la convention de subroger se fasse avant le paiement." Marcadé on article 1250, C. N. The reason why it cannot be agreed to after the payment is that the debt is then extinguished, and can no longer be the subject or basis of an agreement. Bigot Preameneu, Exposé des Motifs, art. 1250; Laurent, vol. 18, No. 25.

Judgment affirmed.