WATSON, Judge ad hoc.
The defendant, W. M. Heroman and Company, Inc., contracted with the Board of Supervisors of Louisiana State University to construct a “plant-office supply-stores building”, and the defendant, American Employers Insurance Company, wrote the surety bond on the construction contract. Plaintiff, Charles W. Cox, was engaged as subcontractor by Heroman to do electrical work on the project for a contracted price of $37,590.00.
Cox now sues Heroman and the surety for the sum of $10,016.32 which includes the amount of $4,349.74 paid by Heroman to a supplier of electrical materials, a back charge of $107.00, and $5,558.99 which is not disputed.
This litigation involves chiefly the claim against Heroman by Cox for the sum of $4,349.74 which was paid by Heroman to Reulet Electric Supplies, Inc., the company which had supplied most of the materials to Cox for incorporation in the LSU job. Cox contends that Heroman unlawfully paid this amount to Reulet and demands that Heroman now pay this sum to Cox. Both Cox and Heroman claim back charges: in addition to Cox’s claim of $107.00, Hero-man claims the amount of $304.45 for items of work performed by Heroman, the contractor, on behalf of Cox, the subcontractor.
The principal legal issue to be resolved is, in our appreciation, relatively simple, and it is whether a third party who pays a debt owed by another may recover the amount paid from the debtor. However, the respective contentions of the parties are somewhat more complex.
The essential facts are as follows. Hero-man contracted in early 1970 with the Board of Supervisors of Louisiana State University to construct a building on the Baton Rouge campus for an original contract price of $543,000.00. The bond was signed by American Employers Insurance Company and duly furnished to LSU as the owner. Heroman then engaged Cox, who had subcontracted for Heroman on other jobs, to do the electric work and a subcontract was signed under the date of March 10, 1970. Although the subcontract called for the furnishing of a performance bond by Cox with premium to be paid by Hero-man, none was obtained. The agreement between Heroman and Cox was on a form subcontract as printed by the American Institute of Architects and a copy appears in the record. As we read the subcontract, it outlines the various duties and rights of the parties, but at no point does it specifically authorize the contractor to allocate sums due the subcontractor to persons to whom the subcontractor may become indebted during his work on the project.
However, Heroman makes the contention that by interpretation of the subcontract and the construction contract it had the right to pay Reulet for supplies furnished to Cox and incorporated in the job. We do not find that the documents in question clearly make such a provision.
Cox undertook the work required by the subcontract and, from the testimony of all parties,' performed it in a good and workmanlike manner. He purchased most of his materials from Reulet, and that company, according to the testimony of Raymond E. Reulet, began to become concerned late in 1970 or early in 1971 about the status of the Cox account on the LSU job. According to Mr. Reulet, he had numerous conversations with the Heroman company and with the plaintiff on the telephone about the status of the account. Then on April 14, 1971, Reulet wrote Heroman stating the balance due on the account to be $8,347.30 and advising Heroman that Reu-let intended to place a lien on the LSU job unless the account was paid. Mr. Reulet also testified that he had been attempting to contact Cox, even sending him a registered letter, but Cox would not reply to the telephone calls or correspondence.
The testimony of both Mr. Reulet and of W. M. Heroman convinces us that Hero- *736 had kept in touch with the status of Cox’s account with Reulet from the outset of the job when Heroman advised Reulet that Cox was not bonded but that Reulet would be paid.
On or about February 4, 1971 Heroman had a conference in his office with Cox, and with Mrs. Cox also present, concerning the indebtedness of Cox to Reulet and a smaller amount due to another supplier of materials. At the time of the February conference Heroman asked if he could make checks for progress work payments to Cox jointly with the suppliers. Cox refused to agree. However, on March 8, 1971, Heroman did issue a check payable jointly to Cox and Reulet. This was in the amount of $4,349.74 which represented a work progress payment. This check was mailed to Cox and he refused it, returning it with a registered letter. According to W. M. Heroman’s testimony, he then attempted to contact Cox on a number of occasions but like Reulet was unable to reach him.
Then on April 14, 1971 Heroman issued a check to Reulet Electrical Supplies for $4,349.74.
As a result of this series of events, Cox filed a lien against the LSU building in the amount of $10,016.62, and instituted the present lawsuit. Also Cox claims attorney fees and legal interest.
Heroman and American Employers Insurance Company answered the petition, denying most of the allegations of plaintiff but reciting their view of the facts and contending the check was issued to Reulet to protect the interests of the owner of the building. Also recited were back charges for work claimed to have been done by Heroman for Cox on July 1, 1970, August 12, 1970, August 18, 1970, December 9, 1970, June 30, 1971 and December 7, 1971, amounting to $304.45. Heroman admitted holding funds in the amount of $5,254.54 for the account of Cox and contended that Heroman had offered to pay such an amount to Cox as full and final settlement of the contract and for cancellation of the lien but Cox refused.
After the matter was tried on the various contentions of the parties, the trial court found in favor of Cox. The trial court emphasized its conclusion that under the subcontract there is no express authority for the contractor to pay a material supplier of the subcontractor directly. The only authority noted by the trial court is the right to withhold payments to protect the owner from possible loss. Also, the trial court was impressed with the fact that when Heroman made a check payable jointly to Cox and Reulet, Cox returned this check with a letter stating that the account was in dispute and asked Heroman to not become involved in the dispute.
Therefore, the trial court held that Hero-man had violated the terms of the subcontract with Cox and that Cox was entitled to recover the amount paid by Heroman to Reulet.
To place the basic issue in proper perspective, we must first note that we are convinced from the record that at the time of payment by Heroman to Reulet, the account owed by Cox to Reulet exceeded the amount paid by Heroman. Filed in the record are copies of Reulet’s invoices in excess of $8,000.00. There is no evidence in the record which would indicate that Cox did not owe Reulet at least $4,349.74. Thus, we are dealing with an actual debt. This is verified not only by the testimony of W. M. Heroman and Raymond E. Reulet, but by the testimony of Cox himself who admitted owing Reulet at the time of the payment. Mrs. Cox, who kept the books, was silent on the question of the amount owed Reulet. Cox did not specify an amount but on the other hand Reulet quoted a figure in excess of $8,000.00 and Cox did not deny that the amount exceeded the total paid by Heroman to Reulet.
The conclusion by the trial court that Heroman violated the contract by making the payment to a material supplier, in our opinion, is incorrect.
*737 Our appreciation of the situation is that Heroman, a third party, paid the debt of Cox to Reulet. The question then becomes, as noted above, may the third party recover from the debtor the amount which has been paid. We answer this question in the affirmative on the authority of Standard Motor Car Company v. State Farm Mutual Automobile Insurance Company, 97 So.2d 435 (La.App. 1 Cir. 1957). The rule of law pronounced in Standard, Motor Car is precisely applicable to the situation presently before the court.
This court concluded in Standard Motor Car that under LSA-C.C. 2134 the payment by a third party (in this case, Heroman) discharges the debtor (in this case, Cox) although it also provides that the third party is not subrogated to the rights of the creditor. After examining several French authorities, the court concluded in Standard Motor Car that while not subrogated to the rights of the creditor, the third party who pays the debt of another has an action for reimbursement against the debtor. See also Nola Forwarding Company v. Levine, 197 So.2d 139 (La.App. 4 Cir. 1967).
Able counsel for Cox presents a spirited argument in his brief that Heroman is not subrogated to the rights of Reulet. We agree with this contention. However, we do not agree with the contention that Hero-man had no right to make the payment since the debt, according to Cox, was not liquidated and was disputed. We are impressed with testimony in the record of Reulet who stated that Cox owed him over $8,000.00 for material supplied on the LSU job. This statement is corroborated by the testimony of W. M. Heroman who stated that he kept close check on Cox’s accounts and became increasingly concerned about them. Heroman also had copies of Reulet’s invoices. In our opinion, Heroman was in good faith and thought he was paying a just debt of Cox’s. Also significant is the fact that both Reulet and Heroman attempted to get in touch with Cox from time to time and were unable to do so. The situation might be different if Heroman had voluntarily paid the entire amount claimed by Reulet, but he did not do so. His payment represented only slightly more than half the amount Reulet testified was due, and we are convinced from the record that Cox was indebted to Reulet in at least that amount.
Therefore, on our analysis of the facts and the applicable law, we conclude that Heroman is entitled to be credited for the amount he paid Reulet on the sum which he owes Cox.
As to the back charges claimed by the defendant, the trial court disallowed them because they were not presented in writing within the first ten days of the calendar month following the occurrence of the charges, as provided by the contractor’s contract. We approve the disallowance of these back charges for the additional reason that we do not think they are substantiated by a preponderance of the evidence as reflected by the record. The trial court also failed to allow the back charge claim by the plaintiff for similar reasons, and we also agree that this back charge was not shown to have been timely presented and was not established by a preponderance of the evidence.
There is no need under the conclusions reached to consider plaintiff’s demand for attorney fees.
For the reasons assigned, we conclude that Cox is not entitled to recover the amount paid by Heroman to Reulet on his account. However, he is entitled to a judgment for the balance due on the contract price from Heroman, which we would recapitulate as follows:
Contract price $37,590.00
Previously paid to Cox 27,681.27
Balance prior to Reulet payment 9,908.73
Payment by Heroman to Reulet 4,349.74
Balance due to Cox 5,558.99
Therefore, it is ordered, adjudged and decreed that there be judgment in favor of *738 plaintiff, Charles W. Cox and against defendants, W. M. Heroman and Company, Inc. and American Employers Insurance Company, jointly and in solido, in the amount of $5,558.99 together with legal interest from May 22, 1971 until paid. Due to the peculiar circumstances of this case, we believe justice would be served by taxing costs, both in the trial court and on appeal, half against plaintiff and half against defendants.
Affirmed in part; reversed in part.