298 So.2d 848 (1974)
Charles W. COX, Plaintiff-Appellee-Relator,
v.
W. M. HEROMAN & CO., INC., and American Employers Insurance Co., Defendants-Appellants-Respondents.
No. 54094.
Supreme Court of Louisiana.
June 10, 1974.
Rehearing Denied August 30, 1974.
*850 Robert P. Breazeale, Van R. Mayhall, Jr., Breazeale, Sachse & Wilson, Baton Rouge, for defendant-respondent.
R. Boatner Howell, Jr., Howell & Brown, Baton Rouge, for plaintiff-applicant.
TATE, Justice.
A subcontractor ("Cox") sues his general contractor ("Heroman") for the balance due on the subcontract. The general contractor claims a credit for a payment made directly by Heroman to a supplier ("Reulet") of the subcontractor. The trial court did not allow the credit, as not authorized by the subcontract. The court of appeal reversed the trial court's disallowance of the credit. 282 So.2d 734 (La.App. 1st Cir. 1973). We granted certiorari. 286 So.2d 656 (1973).
The issue before us is two fold:
(1) Was Heroman entitled to pay Cox's creditor Reulet directly, over Cox's protect, thus (under Civil Code Article 2134) extinguishing Cox's debt to Reulet as to the extent of the payment and also giving Heroman a right to receive reimbursement of this payment from Cox?;
(2) If Heroman was not entitled to pay Cox's debt to Reulet, nevertheless was not Heroman (by his payment and express agreement with Reulet) subrogated to recover Reulet's debt against Cox (Article 2159), thus entitling Heroman in the present suit to reduce the balance due by Heroman to Cox under the subcontract to the extent that it is extinguished (through the compensation of two debts, Article 2207) by the subrogated (Reulet) debt due by Cox to Heroman?

Facts
Heroman as general contractor entered into a construction contract with a university *851 in the amount of over five hundred thousand dollars. Heroman and Cox entered into a subcontract by which Cox agreed to perform the electrical work for $37,590.00.
In the course of construction, progess payments were made by Heroman to Cox totalling $27,681.27. (An additional ten percent of the total of the progress estimates was retained by Heroman, in accordance with the subcontract agreement, for payment upon final acceptance.)
As the completion of both the general contract and the subcontract neared, the present controversy arose. Heroman was informed by several suppliers of Cox on the job that Cox had not paid them, and Reulet (Cox's principal supplier) informed Heroman that it would lien the job.
The facts forming the basis of the litigation occurred when on April 14, 1971 Heroman paid Reulet directly $4,349.74 to credit against Cox's debt due Reulet for supplies on the job. This sum was the total balance then due by Heroman to Cox. (It did not include the ten percent retained per the contract.) The payment was specifically made for the account of Cox due for supplies on the present contract. Cox was sent a carbon copy of the letter by which payment was made.
Prior to this payment of April 14, 1971, Reulet had conferred with Heroman about an unpaid amount of $8,360.55 due for supplies furnished Cox for the contract. Heroman had then sent to Cox a check for $4,439.74, payable to Cox and Reulet jointly. (This was the same amount later paid Reulet directly, being the then total unpaid balance due by Heroman to Cox.)
Cox returned the check to Heroman. He stated that he considered this direct payment improper and unacceptable. He alleged that there were considerable overcharges claimed by Reulet amounting to over twenty-five hundred dollars.[1]
Reulet then wrote Heroman that it would place a lien on the job unless the amount due was paid at this time. Reulet's letter concluded, that, if Heroman would pay the unpaid invoices due by Cox, Heroman "is subrogated to all rights that we have against Cox in connection with this job and such payment."[2]
Upon receipt of this letter, Heroman immediately paid Reulet the full balance then due Cox ($4,349.74) by progress estimates, as stated above. Reulet accepted this payment, credited Cox's account, and did not lien the job.
Cox then on April 22, 1974 filed a lien for the unpaid balance due on the job. Correspondence introduced by Cox shows that unsuccessful negotiations were subsequently conducted between Cox, Reulet, and other suppliers in an effort to allocate the remaining amount due by Heroman to Cox to unpaid accounts of Cox resulting from his performance of his subcontract.
On December 27, 1971, Cox filed the present suit against Heroman and its surety (American Employers) to recover $10,016.62, then allegedly due under the contract, together with ten percent statutory attorney fees. The suit alleged that the unpaid balance included the sum of $4,349.74 *852 74 which had been paid by Heroman to Reulet. In the suit, Cox specifically alleges that he was contesting the total amount claimed by Reulet ($8,360.55) because he estimates "Reulet overcharges and errors in the amount of $2,500.00." See Art. 9 of petition.
Cox alleged that Heroman owed him: $5,448.99 representing the final draw and retainage (which Heroman in its answer conceded owing, except for back charges of $304.45), an alleged add-on due of $107.89 (which both previous courts found not owing), and the $4,349.74 previously paid by Heroman to Reulet.
Heroman's answer pleaded the facts of the dispute, and acknowledged liability for only the final draw and retainage of $5,254.54.
The trial court held that Heroman was not entitled under its contract to pay Reulet, Cox's creditor, directly. It therefore disallowed credit to Heroman for such payment and awarded Cox judgment for that sum, plus the amount due for the final draw and retainage, for a total amount of $9,908.73.[4]
As earlier noted, the court of appeal concluded that the trial court was in error in refusing to allow Heroman credit against Cox's claim for the amount paid by Heroman to extinguish pro tanto Reulet's claim against Cox for supplies furnished for the present job. The court of appeal essentially held that Heroman was entitled to pay the debt due by Cox to Reulet and to be reimbursed by Cox for this payment, by reason of Civil Code Article 2134.[5] See Standard Motor Car Company v. State Farm Mutual Automobile Insurance Co., 97 So.2d 435 (La.App. 1st Cir. 1957).
1. "Payment" under Article 2134
We granted certiorari primarily because of our doubt that, under the circumstances here shown, the debtor Heroman could extinguish a debt due to its creditor Cox by paying, not Cox, but Cox's creditor. We entertained this doubt because: (a) Cox expressly opposed such payment by Heroman of his debt due Reulet; instead, Cox expressly desired to receive amounts due him by Heroman for purposes of negotiating the payment due by him to Reulet in connection with certain disputed items; (b) The subcontract between Heroman and Cox expressly provided for Heroman's remedy, in the event of Cox's non-payment of suppliers on the job, namely, Heroman was to withhold payments due Cox until the grounds for non-payment were removed.
Article 2134 (quoted in full in Footnote 5) provides that an "obligation may even be discharged by a third person in no way concerned in it", provided that, "if he act in his own name, he be not subrogated to the rights of the creditor." (Italics ours.)
Although not subrogated to the rights of the creditor (such as to receive a stipulated interest or attorney's fees in the event of non-payment), a third person acting in his own name is entitled to be reimbursed by the debtor for the sum used to discharge the latter's debt. See Article 2299; Roman v. Forstall, 11 La.Ann. 717, 720 (1856); Standard Motor Car Company v. State Farm Mutual Automobile Insurance *853 Co., 97 So.2d 435 (La.App. 1st Cir. 1975). See also Hutchinson v. Rice, 105 La. 474, 29 So. 898 (1901); Weil v. Enterprise Ginnery & Mfg. Co., 42 La.Ann. 492, 7 So. 622 (1890); Gernon v. McCan, 23 La. Ann. 84 (1871); Nicholls v. His Creditors, 9 Rob. 476 (1845). The creditor cannot even refuse to receive the payment tendered by the third person, State ex rel. John Klein & Co. v. Pilsbury, 29 La.Ann. 787 (1877), unless perhaps the creditor has some special interest in having the obligation fulfilled by the debtor himself, Article 2136.[6]
Articles 2134 and 2136, literal translations of French Civil Code Articles 1236 and 1237, are in accord, as thus interpreted, with traditional civilian obligations theory. 1 Litvinoff on Obligations, Section 27, p. 47, and Section 49 (Louisiana Civil Law Treatise, Vol. 6; 1969); Planiol, Civil Law Treatise, Vol. 2, Section 401 (LSLI translation, 1959); 1 Civil Law Translations (Aubry & Rau, Obligations), Sections 315, 316 (1965).
As summarized in the last-cited translation of Aubry & Rau, at pp. 156-58: "In general, the creditor cannot refuse payment offered by a third person whether or not interested in the extinction of the obligation... A payment made by a third person and accepted by the creditor extinguishes the obligation as definitively as one effected by the debtor personally, except where the third person is legally or contractually subrogated to the rights of the creditor. In the last case, the debtor is discharged toward the original creditor, but the obligation continues to exist in favor of the third person who has been subrogated thereto." (The italics are supplied to emphasize a legal distinction between "payment" under Article 2134 and "subrogation" under Articles 2159-2161, a distinction which is of decisional importance in this case.)
The right of the third person to pay the creditor in his own name, and the obligation of the creditor to receive such payment for the benefit of the debtor's account, is not unqualified:
Where, for instance, it is done to harm the debtor's interest, it may be an abuse of the third person's right to make the payment. See Comment, Abuse of Rights in Louisiana, 7 Tul.L.Rev. 426 (1933). Further, when the debtor opposes the payment, some decisions hold that the third person's payment, in the absence of subrogation, cannot be recovered, since the third person cannot conceptually be held to have acted on behalf of the debtor.[7] Woodlief & Legendre v. Moncure, 17 La.Ann. 241 (1865). See also Succession of Mulligan v. Kenny, 34 La.Ann. 50 (1882). See Comment, 7 Tul.L.Rev. 253, 256 (1933). Finally, where the third person and the debtor have a contractual relationship which regulated the former's right to pay the debts due by the debtor to others[8], this contractual right may limit the third person's right to extinguish *854 such debt due by the debtor to another. See Civil Code Article 1901: "Agreements entered into have the effects of laws on those who have formed them. * * *." Cf. Hardin v. Federal Rice Mill Co., 164 La. 49, 113 So. 760 (1927).[9]
Without at this time attempting to determine what weight, if any, shall be accorded to any of these particular factors, it is sufficient for us to hold that, by reason of the totality of circumstances (including the contractual relationship between Heroman and Cox), Heroman did not have the right under Article 2134 to extinguish Cox's debt to Reulet by directly paying Reulet despite Cox's opposition to such payment.
2. Subrogation under Articles 2159, 2160
This does not end our inquiry, however. Heroman argues that, even though it was not entitled to extinguish Cox's debt and to receive reimbursement under Article 2134, it was by its payment expressly subrogated to recover from Cox this amount paid by it and to receive credit against its liability due Cox under the subcontract. For the reasons to be stated, we find this last contention to be well-founded.
To recapitulate:
On the date of the April 14, 1971 payment, two debts were involved: (a) that between Heroman and Cox, by which Heroman owed Cox $4,349.74, payable immediately, but subject to Heroman's contractual right to withhold payment to Cox until Cox paid his debt due Reulet (see debt b); and (b) Cox's debt due Reulet for supplies received on the Heroman-Cox job, which totalled $8,360.55 by Reulet's invoices, of which amount Cox contested $2,500 as overcharges.
If Heroman's payment to Reulet did not entitle Heroman to extinguish pro tanto Heroman's debt to Cox, then as (at least) of the date of the trial court judgment of June 20, 1972 there are also two debts at issue in this litigation, both equally liquidated and demandable: (a) the debt due Cox by Heroman in the amount of $9,908.73, being due for the final progress estimate and the retainage; (b) the debt due Heroman by Cox for $4,349.74, Heroman's expressly subrogated right to recover this amount of the debt previously due by Cox to Reulet.
For reasons we will set forth, debt (b) exists as well as debt (a). The debts being equally due and demandable, at least as of the time of the judgment, they are mutually extinguished by the compensation. See Articles 2207-2209.[10]
*855 The subrogated debt of $4,349.74 is due by Cox to Heroman, for the following reasons:
Article 2159 provides: "Subrogation to the right of a creditor in favor of a third person who pays him, is either conventional or legal." Article 2160(1) provides that a conventional subrogation shall take place, "When the creditor, receiving his payment from a third person, subrogates him in his rights, actions, privileges, and mortgages against the debtor; this subrogation must be expressed and made at the same time as the payment."
In urging that an express conventional subrogation took place, Heroman relies upon: (a) the offer by Reulet to receive payment of invoices due it by Cox and "upon receipt of said payment, your Company [i. e., Heroman] is subrogated to all rights that we have against Cox in connection with this job and such payment",[11] Cox further offering not to lien the job if Heroman would make such direct payment; (2) Heroman's acceptance of such offer by paying all the money then due Cox to Reulet, whereupon Reulet ratified the qualified acceptance by crediting Cox's account with payment and desisting from liening the job.
Heroman's contention is well founded. By the acceptance of the offer, Heroman was subrogated to Reulet's right to recover Reulet's debt against Cox. A third person "having agreed to pay the debt only on condition that he should be subrogated, he was ipso facto subrogated when he made the payment. The thing having been understood and agreed upon, it was not necessary to have any further agreement on the subject at the time of payment. The payment was made in accordance with the agreement; that is to say, with subrogation." Cooper v. Jennings Refining Co., 118 La. 181, 183, 42 So. 766 (1907).
A creditor (Reulet) has the right to receive payment on a debt owed him and, by contract, to subrogate his payor (Heroman) to his claim. The debtor (Cox) cannot, by prohibiting the payor (Heroman) to make such payment, thus limit the creditor's legal right to make such a contract in order for the latter to receive payment. Subrogation is thus permitted in the interest of the creditor rather than of the debtor. This is distinguishable from a payment made by a third person under Article 2134, which theoretically is an act done in the debtor's interest; the debtor, by prohibiting the act, can deny the third-person payor the right to act allegedly in the former's interest.
Cox argues that subrogation is not at issue and did not occur because: (1) it was not pleaded by Heroman; (2) partial subrogation is not permitted without the consent of the debtor.
As to (1): Although extinguishment of the debt is a special defense which must be pleaded affirmatively, La. C.Civ.P. art. 1005, the facts set forth in the pleadings adequately put the plaintiff on notice that the affirmative defenses based on subrogation and compensation were at factual issue. Our code of civil procedure sets forth a system of fact pleading. Articles 854, 891, 1003, 1004. So long as the facts constituting the claim or defense are alleged or proved, the party may be granted any relief to which he is entitled under the fact-pleadings and evidence; the "theory of the case" is abolished as a pleading requirement or restriction. Articles 862, 1154, 2164. Thus, so long as the facts pleaded gave the opposing party adequate notice of the defense, it was not necessary to label such defense "extinguishment of the obligation", "subrogation", "reimbursement", "compensation" or the like. See, e. g., Paxton v. Ballard, 289 So.2d 85 (La.1974).
*856 As to (2): In contending that partial subrogation is not permitted, as dividing the debt without the consent of the debtor, Cox relies upon a line of decisions holding that partial assignment is not permitted without the consent of the debtor.[12] There is a substantial conceptual difference between, on the one hand, an "assignment", which has the nature of the sale and acquisition of a credit so as to permit its enforcement of the assignee, and, on the other hand, a conventional "subrogation", which has for its primary purpose the negotiated discharge of a debt due to the creditor. Civil Law Translations (Aubry & Rau, Obligations), Section 321 b (1965); Comment, 25 Tul.L.Rev. 358, 368-69 (1951). Thus, in a subrogation the interest of a creditor (here, Reulet) in receiving payment of his debt in return for subrogating the third party to his right to recover it, outweighs the interest of the debtor (here, Cox) in avoiding the division of the debt he owes into multiple claims, the policy preventing partial assignments (see decisions cited in Footnote 12 above).
No authority is cited to us which prevents partial subrogation. The Civil Code, in fact, recognizes that a partial subrogation can take place in the case of a legal subrogation, Article 2161, and that, in the case of both legal and conventional subrogation, a partial subrogation may take place, Article 2162.[13]
Planiol notes: "Subrogation by consent of [the] creditor ... is always possible. The creditor, on receiving payment from a person other than the debtor, can always accord to him a subrogation to assure his recourse, and he is also free to refuse it." Vol. 2, Section 479. "The subrogation, resulting exclusively from the creditor's will, may, at his pleasure, be total or partial." Section 482. "When the creditor has received from the subrogee a partial payment only, the credit is divided between them; the original creditor remains creditor for the unpaid portion and the subrogee becomes creditor to the extent of the payment he has made." Section 515. Planiol also notes that the only conditions required to effect a conventional subrogation are that it be express and that the creditor should consent to it, at the latest, at the time that the creditor receives his payment. Section 480.[14]
We could find no decisions which held that the consent of the debtor was necessary for the creditor to subrogate part of the debt due by receiving payment from a third person. On the other hand, we found decisions such as R. M. Walmsley & Co. v. Theus, 107 La. 417, 31 So. 869 (1901) and numerous collision insurer subrogation cases which without discussion allowed a partial subrogation by the creditor unconsented-to by the debtor.
We therefore find valid the partial subrogation to Heroman resulting from the *857 express agreement of Reulet at the time Heroman made payment to Reulet upon Cox's debt.
When a subrogor sues the debtor, the latter has the right to raise all defenses available. Here, the evidence is uncontradicted that Cox owed Reulet in excess of the amount paid to Reulet by Heroman, the claim against Cox to which Reulet was expressly subrogated to such payment. If Cox seriously contended he did not owe Reulet the amount to which Heroman was subrogated, Cox had the right under the pleadings to prove such opposition to Heroman's claim of credit for such amount.
3. Conclusion
In summary, we hold that Heroman is entitled by reason of compensation to receive a credit against the debt Heroman owes Cox arising out of the equally liquidated and demandable debt due Heroman by Cox by reason of Heroman's subrogated claim.
At the time Heroman made the payment to Reulet, it was not entitled to credit against its debt due Cox, by reason of the stipulations in the contract between Cox and Heroman and of Cox's expressed opposition to such payment. However, whatever right Cox may have had under its contract to secure penalties from Heroman for non-compliance with the contract terms, this issue has passed out of the case (see Footnote 4).
The only issue thus before us is whether, when both claims are equally liquidated and demanded, Heroman is entitled to compensate its subrogated claim owed by Cox against its debt owed to Cox. We hold that it is.[15] We thus reach, for different reasons, the same result as the court of appeal.
Accordingly, for the reasons assigned, we affirm the court of appeal decree.
Court of appeal decree affirmed.
DIXON, J., dissents with reasons.
DIXON, Justice (dissenting).
I respectfully dissent. The Code provides that the subrogation agreement must be made at the same time as the payment.
C.C. 2160 provides:
"The subrogation is conventional:
1. When the creditor, receiving his payment from a third person, subrogates him in his rights, actions, privileges, and mortgages against the debtor; this subrogation must be expressed and made at the same time as the payment. * * *"
This provision requires that the subrogation be clear, definite and that the subrogation be made at the time of payment. The French article is the same. (C.N. 1804, Art. 1250).
Translations of French commentators that are available to us are even more specific. Planiol says the subrogation "must be conferred at the same time as payment." Planiol, Civil Law Treatise, Vol. 2, No. 480 (Louisiana State Law Institute Translation 1959). Aubry and Rau say the subrogation "must be made simultaneously with the payment." Aubry and Rau, Cours de Droit Civil Francais, § 321, Vol. I, Civil Law Translations, La.Law Inst. 1965.
From the meager resources at hand, it appears that the modern French view has not departed from the very explicit codal provisions.
Carbonnier says:

"Condition de temps: la subrogation doit etre consentie au moment meme du paiement (en pratique, dans la quittance *858 meme, quittance subrogatoire)." Droit Civil, Vol. 2, No. 130 (1956).
A report of the most recent jurisprudence states:
"La date de la subrogation doit être contemporaine du paiement (Com. 14 déc. 1965, Rec. Gaz. Pal. 1966. 1. 278)." Repertorie De Droit Civil (Mise A Jour 1974).
For whatever reason, conventional subrogation agreements in anticipation of payment are not sanctioned by our statutes. The subrogation must be consented to at the time of payment.
Dicta in Cooper v. Jennings Refining Co., 118 La. 181, 42 So. 766 is contrary. That case, however, did not necessarily involve conventional subrogation, in spite of the discussion of conventional subrogation in the opinion. The claimant guaranteed payment for a load of pipethe debt of anotherand became a surety. C.C. 3035. Upon payment, the surety had recourse against the debtor (C.C. 3052) and, in addition, was subrogated to the rights of the creditor by operation of law. C.C. 2161(3).
The Court was distracted in Cooper v. Jennings, supra, because the surety did not agree in writing to pay the debt of another. C.C. 2278. Nevertheless, when the surety recognized his obligation and paid the debt, that problem of proof no longer existed. See C.C. 2133.
The case before us could be decided with less violence to the law under C.C. 2161(3) as a legal subrogation. In spite of toobroad language in Pringle-Associated Mtg. Corp. v. Eanes, 254 La. 705, 226 So.2d 502, the contractor is obligated to pay the materialman if the subcontractor does not. (In Pringle, the subcontractor did not pay the debt of another. He paid his own debt, for which he was primarily liablewages of his workmenand sought legal subrogation to their lien rights.)
Nevertheless, there is something fundamentally wrong in allowing a debtor (Heroman) to pay another person instead of his creditor (Cox) over the strong protest of the creditor.
The unqualified statement by the majority that a non-subrogated third party acting in his own name is entitled to be reimbursed by the debtor for the sum used to discharge the latter's debt is of doubtful validity. The authorities cited to support such a proposition were, in the main, concerned with other issues. In Roman v. Forstall, 11 La.Ann. 717 (1856), there was a valid subrogation of the third party to the rights of the creditor; however, the court found that the third party was entitled to recover the sum paid from the debtors under a theory of negotiorum gestio. Weil v. Enterprise Ginnery & Mfg. Co., 42 La.Ann. 492, 7 So. 622 (1890) holds that mere payment of a note by a third party does not subrogate that person to the rights of the creditor. The opinion then states as dicta, in reliance on a headnote from Nicholls v. His Creditors, infra, that such circumstances would constitute the party who paid an ordinary creditor of him for whose benefit the payment was made. Gernon v. McCan, 23 La.Ann. 84 (1871), has nothing to do with the proposition for which it is cited. Nicholls v. His Creditors, 9 Rob. 476 (1845), holds that mere payment of a note by one not bound for it does not subrogate the one who pays to the rights of the creditor.
The preferred solution to the problem in the case before us is to allow the creditor Cox to prevail, and collect from his debtor Heroman, reserving to Heroman whatever rights he might have to reimbursement from Reulet.
NOTES
[1] Cox, in failing circumstances, was at this point claiming that all his suppliers had overcharged him.
[2] Reulet's letter to Heroman provides:

"We enclosed herewith our unpaid invoices for materials purchased by Mr. Cox and installed on the above captioned job. The total amount of these unpaid invoices is $8,360.55. I hereby certify that the amounts shown on these invoices are true and correct.
"As we have previously told you, we have been unable to collect the $8,360.55 from Mr. Cox. Accordingly, we have no alternative but to place a lien on this job unless the amount due us is paid at this time. You have told us that under the circumstances you will pay our unpaid invoices on this job, and this is to acknowledge that upon receipt of said payment from you, your Company is subrogated to all rights that we have against Cox in connection with this job and such payment." (Italics ours.)
[4] We may say at this point that the questions of the disallowance of the ten percent attorneys fees for nonpayment when due of the subcontract price, and of the $107.89 add-on, as well as of Heroman's claim that the final draw and retainage was subject to a credit for $304.45 back charges, are not before us. The parties apparently accepted the determinations of the previous courts as to them, and they did not and do not seek further review of them.
[5] Article 2134 provides:

"An obligation may be discharged by any person concerned in it, such as a coobligor or a surety.
"The obligation may even be discharged by a third person no way concerned in it, provided that person act in the name and for the discharge of the debtor, or that, if he act in his own name, he be not subrogated to the rights of the creditor."
[6] Article 2136 provides in full:

"The obligation of doing can not be discharged by a third person against the will of the creditor, when it is the interest of the latter that it be fulfilled by the debtor himself."
This article literally refers to an obligation to do, as distinguished from an obligation to give (which includes an obligation to pay.) Articles 1883, 1905. The French interpretations of French Civil Code Article 1237 (of which Louisiana's Article 2136 is a literal translation) are in disagreement whether the provision permits the creditor to reject payment as distinguished from doing tendered by a third person. See 1 Civil Law Translations (Aubry & Rau, Obligations), Section 316 at footnote 2 (1965).
[7] Here, however, the principle of unjustified enrichment may permit the third person to recover for benefits received by the person enriched. Police Jury v. Hampton, 5 Mart., N.S., 389 (1827).
[8] The subcontract between Heroman and Cox provided that, when the subcontractor (Cox) failed to pay his suppliers on the job as required by the contract, then the general contractor (Heroman) had the right to withhold payments due Cox until Cox paid his suppliers. This might be regarded as a contractual substitution limiting the right of Heroman under Article 2134 to extinguish by direct payment any debt owed by Cox to his suppliers.
[9] A rice broker paid the freight-charges on rice shipped by the owner-consignor. The rice had been sold upon the express agreement that the purchaser would be liable for shipping costs. The broker paid the freight charges and then, when the purchaser became insolvent, sued the seller-consignor. He was denied recovery. Although the consignor-seller was ordinarily primarily liable, under the contract the shipping charges became the debt of the purchaser. Whatever the broker's rights against the purchaser, he was not entitled to recover the shipping charges from the seller because, under the contract, the shipping charges were to be paid otherwise than by it.
[10] These articles provide:

"Art. 2207. When two persons are indebted to each other, there takes place between them a compensation that extinguishes both the debts, in the manner and cases hereafter expressed."
"Art. 2208. Compensation takes place of course by the mere operation of law, even unknown to the debtors; the two debts are reciprocally extinguished, as soon as they exist simultaneously, to the amount of their respective sums."
"Art. 2209. Compensation takes place only between two debts having equally for their object a sum of money, or a certain quantity of consumable things of one and the same kind, and which are equally liquidated and demandable.
"The days of grace are no obstacle to the compensation."
[11] The letter is quoted in full at Footnote 2. It was introduced in evidence as D-1 without objection in connection with Reulet's testimony. The pre-trial order previously noted Heroman's intention to offer this letter in evidence.
[12] Red River Valley Bank & Trust Co. v. Louisiana Petrolithic Const. Co., 142 La. 838, 77 So. 763 (1918); Meyer v. Vicksburg, Shreveport & P. Railway Co., 35 La.Ann. 897 (1883); LeBlanc v. Parish of East Baton Rouge, 10 Rob. 25 (1845); Cantrelle v. LeGoaster, 3 Rob. 432 (1943); Miller v. Brigot, 8 La. 533 (1835); King v. Havard, 5 Mart., N.S., 193 (1826); Stein v. Williams Lumber Co., 36 So.2d 62 (La.App.Orl.Cir. 1948); Lane v. Deas Co., 12 La.App. 382, 125 So. 514 (1929). All of these cases involved assignments rather than subrogation. Stein, however, itself an assignment case, included the dictum that subrogation, as well as assignment, was prohibited without the debtor's consent, erroneously citing the other above-noted assignment cases as authority.
[13] Article 2162 in full provides:

"The subrogation established by the preceding articles, takes place as well against the sureties, as against the debtors. It can not injure the creditor, since, if he has been paid but in part, he may exercise his right for what remains due, in preference to him from whom he has received only a partial payment."
[14] We should note that there is a difference between a subrogation by the creditor, Article 2160(1), and a subrogation by the debtor, Article 2160(2)the latter requiring the consent of the creditor affected. See Planiol, Vol. 2, Sections 484-490.
[15] If we were to hold otherwise, then Heroman would have to sue Reulet to recover back the money paid to it in error, and Reulet would have to sue Cox to recover such amount, which until now it has credited on its unpaid claim for supplies against Cox.