346 So.2d 1331 (1977)
STATE FARM FIRE AND CASUALTY COMPANY et al.
v.
SENTRY INDEMNITY COMPANY et al.
No. 6011.
Court of Appeal of Louisiana, Third Circuit.
May 13, 1977.
Rehearing Denied June 24, 1977.
*1332 Voorhies & Labbe, by W. Gerald Gaudet, Lafayette, for defendants-appellants.
Stockwell, Sievert, Viccellio & Clements, by John S. Bradford, Lake Charles, for plaintiffs-appellees.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, by Robert M. Mahony, Lafayette, for third party defendant-appellee.
Before WATSON, FORET and HEARD, JJ.
WATSON, Judge.
This is a subrogation claim brought by three fire insurers against Mrs. Emma Baylot and her liability insurer, Sentry Indemnity Company[1], to recover fire loss to a residence. Plaintiffs are State Farm Fire and Casualty Company, Central Mutual Insurance Company and Hanover Insurance Company.
The three plaintiffs issued policies to the First Baptist Church of Jennings for fire and extended coverage on all church property including the parsonage (or "pastorium") which was the home furnished to the Rev. Baylot by the church. Central Mutual's policy covered sixty per cent of the risk while State Farm and Hanover each had twenty per cent. On March 3, 1973, the parsonage sustained fire damage of $25,101.44, but the amount claimed is $25,000, the limits of the Sentry policy. The plaintiff insurers paid the loss to the church and then filed a subrogation suit against Rev. and Mrs. Baylot and Sentry. They allege that Rev. Baylot's wife, Emma Baylot, caused the fire by negligently failing to turn off a stove burner under a pot containing grease.
After trial on the merits, judgment was rendered in favor of plaintiffs and against Sentry and Mrs. Baylot: $5,000 to State Farm; $15,000 to Central and Mutual and $5,000 to Hanover.
The issues on appeal, as framed by the specifications of error urged by counsel for Sentry, are as follows:
(1) Was Mrs. Baylot an employee of the First Baptist Church of Jennings?
(2) Was the trial court manifestly in error in finding Mrs. Baylot negligent?
(3) Did the trial court err in finding that the plaintiff insurance companies were subrogated to the claim?
Employee Status
Sentry argues that, under the policies of the three plaintiff insurers, an employee of the church is a co-insured against whom plaintiffs have no claim. It is contended that Mrs. Baylot was such an employee because she taught Sunday school, instructed in training union, visited the sick and sang in the church choir. It is common knowledge that many people perform similar services for the various protestant churches but do not have employee status.
Judge Schott, in Wambles v. State, 283 So.2d 331 (La.App. 4 Cir. 1973), summarized the four primary factors to be considered in determining employee status:
(1) selection and engagement;
(2) payment of wages;
(3) power of dismissal; and
(4) control.
Mrs. Baylot meets none of these tests: she was not selected by the church but rather by the pastor; she is not paid wages; the church does not have the power to dismiss her; and the church has only limited powers of control over her, if any.
*1333 The trial judge was correct in concluding that Mrs. Baylot is not an employee of the church.
Negligence
Next, Sentry argues that the trial court erred in holding Mrs. Baylot responsible for the fire, either under the doctrine of res ipsa loquitur or negligence.
It is not clear that the trial court applied the doctrine of res ipsa loquitur, but, if so, this was not error. The doctrine is not a rule of pleading or substantive law but a rule of evidence. Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (1972). The question to be posed is whether the facts suggest negligence of the defendant rather than other factors as the most plausible explanation of the accident. 264 So.2d 621 at 636. The record here supports the application of res ipsa loquitur.
As to Mrs. Baylot's negligence, she testified that she went to the electric stove to turn off a burner under some eggs, but also had on the stove a gumbo pot and a skillet of grease. She then accompanied her husband and some guests on a short drive to a museum. Upon arrival, they heard the fire alarm and their 15-year-old son rushed up to advise them that the house was on fire. The first fireman who entered the burning area, Richard Earl Edwards, observed that the stove was turned on; a burner was on; and a pot which he remembered as being either the gumbo pot or the skillet of grease had burned and was empty. There was fire in the cabinet above the stove and in the ceiling of the kitchen, which extended into the den of the house. Under the factual circumstances presented, the trial court was not manifestly erroneous in concluding that Mrs. Baylot had negligently turned on or left on the burner under the skillet of grease and this caused the fire.
Subrogation
The final argument of Sentry is that the plaintiff insurers are not entitled to subrogation rights. Subrogation agreements were signed by a representative of the First Baptist Church of Jennings in accordance with the terms of the fire insurance policies. Defendants point out that these agreements are not dated and LSA-C.C. art. 2160(1) requires that conventional subrogation must be expressed and made at the time of payment. However, a stipulation for subrogation was part of the insurance policies[2] and subrogation took place at the time of payment as a necessary incident. Cooper v. Jennings Refining Co., 118 La. 181, 42 So. 766 (1907). The district court correctly held that the insurers were subrogated to the claim.
For the reasons assigned, the judgment appealed from is affirmed. Costs are taxed against the defendants, Mrs. Emma Baylot and Sentry Indemnity Company.
AFFIRMED.
NOTES
[1] This litigation has been before this court on a previous occasion, see 316 So.2d 185 (La.App. 3 Cir. 1975), at which time the dismissal of the Rev. Lawrence Baylot as a party was affirmed essentially and the matter was remanded for trial on the merits.
[2] See P-2, p. 3, and D-3 (in globo); the provisions are substantially the same in all three policies; State Farm's states in pertinent part:

"In the event of any payment under this policy, the Company shall be subrogated to all the insured's rights of recovery therefor against any person or organization . . ."